UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK SYFERT,

                             Plaintiff,

v.                                                                    6:19-CV-0775
                                                                      (GTS/ML)
CITY OF ROME,

                             Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

MARK SYFERT
     *Pro Se*
422 West Embargo Street #2
Rome, New York 13440

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* filed by Mark Syfert ("Plaintiff") to the Court for review.  (Dkt. Nos. 1 and 2.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2), recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety and without leave to amend his first, second, third, fifth, and six claims, but with leave to amend his fourth claim.

## I.    BACKGROUND

On September 24, 2015, Plaintiff commenced a *pro se* civil rights action in the Northern District of New York, No. 6:15-CV-1149 (LEK/ATB) ("*Syfert I*") against the City of Rome ("Defendant"), alleging: (1) violation of his right to conduct a legal business without fear of retaliation; (2) ongoing and never ending work related retaliation, revenge, and harassment by

Defendant's Code Department and Mr. Mondrick; (3) failure to conduct a speedy and fair trial; and (4) destruction and tampering with evidence when Mr. Domenico erased city records "proving" Plaintiff's "total innocence" of the Class A Misdemeanor (false statements).  (*Syfert I*, Dkt. No. 1 at 6.)

On October 5, 2015, U.S. Magistrate Judge Andrew T. Baxter granted Plaintiff's IFP application but recommended dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (*Syfert I*, Dkt. No. 4 at 20-21.)  As to the first and second causes of actions, Judge Baxter found that the following conduct, all of which occurred prior to September 24, 2012, was barred by the statute of limitations:

> Plaintiff claims that Mr. Mondrick issued plaintiff an "expired" license in 2008; the notice from the Code Department about plaintiff's grass was also in 2008; the letter from Mark Domenico regarding plaintiff's "three family" residence was in July of 2009; the alleged "illegal" occupancy was issued by Mr. Mondrick and Mr. Hetherington in October of 2009; Mr. Mondrick ordering plaintiff to perform a "water test" when another plumber was not required to do so was in October of 2009; Mr. Mondrick allegedly attempting to "remove" plaintiff's license, and the City of Rome charging plaintiff for its renewal for failure to pay the fee occurred in March of 2011; the allegation that plaintiff's name was thrown in the trash occurred in March of 2011; and the "stop work" order for plaintiff's air conditioning installation occurred on June 6, 2012.

(*Id*. at 13.)  Judge Baxter found that Plaintiff's allegations did not amount to a continuing violation.  (*Id*. at 13-14.)  In addition, Judge Baxter noted that it "appears very unlikely that [Plaintiff] can state federal constitutional claims based upon the allegations that he has made in his complaint."  (*Id*. at 20.)  However, Judge Baxter recommended dismissal of Plaintiff's first and second causes of action without prejudice and with leave to file a proposed amended complaint that addressed the issue of why the statute of limitations should be equitably tolled. (*Id*.)

Plaintiff's third and fourth causes of action related to criminal charges. (*Syfert I*, Dkt. No. 1 at 6.) More specifically, Plaintiff alleged that he had been denied a speedy and fair trial, his right to be innocent until proven guilty had been violated, and Mr. Domenico erased a City recording from 1984 that would prove Plaintiff's innocence of the charges. (*Id.*) Judge Baxter recommended dismissal of these claims because they were barred by *Younger v. Harris*, 401 U.S. 37, 43-54 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1944). (*Syfert I*, Dkt. No. 4 at 9-10.) The Court noted, however, that "[i]f Plaintiff obtains dismissal of the charges prior to trial and conviction, then he may bring an action raising any constitutional violations that may have preceded the charges." (*Id.* at 11 n.11.)

On November 5, 2015, U.S. District Court Judge Lawrence E. Kahn approved and adopted in its entirety Judge Baxter's Report-Recommendation. (*Syfert I*, Dkt. No. 5.) Judgment was entered in favor of Defendant on December 22, 2015. (*Syfert I*, Dkt. No. 6.)

On May 24, 2107, Plaintiff commenced a *pro se* civil rights action in the Northern District of New York, No. 6:17-CV-0578 (GTS/TWD) ("*Syfert II*") against Defendant, alleging: (1) discrimination and interference with civil rights; (2) civil action for deprivation of rights; (3) Defendant's code enforcement policies and procedures are unconstitutional; (4) Defendant's plumber and plumber licensing policies and procedures are unconstitutional; (5) failure to conduct a speedy trial; and (6) malicious prosecution. (*Syfert II*, Dkt. No. 1 at 9-12.)

On August 7, 2017, U.S. Magistrate Judge Thérèse Wiley Dancks granted Plaintiff's IFP application but recommended dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (*Syfert II*, Dkt. No. 4 at 27-28.) As to the first and second causes of actions, Judge Dancks found that the following conduct, all of which occurred prior to May 24, 2014, was barred by the statute of limitations:

> Plaintiff claims that (1) Mr. Mondrick was appointed Plumbing Inspector and changed the way contracts were bid on in Rome in 2007; (2) Mr. Domenico accused Plaintiff of having an "illegal" third floor apartment in 2009; (3) Mr. Mondrick ordered Plaintiff to perform a "water test" when another plumber was not required to do so in 2009; (4) Plaintiff's name was omitted from Rome's Master Plumber list in 2011, even though Plaintiff paid the annual renewal fee; (5) Mr. Mondrick sent a fraudulent letter telling Plaintiff he would have to "re-test for the plumbing exam" in 2011; (6) Code Enforcement issued a "stop work" order on his air conditioning installation in 2012; (7) Plaintiff learned that Mr. Mondrick passed final plumbing inspections on two permits issued to Plaintiff without his knowledge in 2012 and that Mr. Domenico issued "illegal" certificates of occupancy on those permits; (8) Rome's Corporation Counsel told Plaintiff that Mr. Mondrick could interpret the plumbing codes as "he sees fit" in 2012; (9) Plaintiff was served Summons # 13-232 on November 20, 2013, based on false criminal charges, and appeared in court on December 3, 2013.

(*Id*. at 15.)  Judge Dancks also noted that Plaintiff's allegations regarding a conspiracy "even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy."  (*Id*. at 24.)

Judge Dancks found that Plaintiff's allegations did not amount to a continuing violation. (*Id*. at 15-17.)  In addition, as to the third cause of action, Judge Dancks found that Plaintiff's claim, "if actionable at all, accrued on June 6, 2013 . . . or, at the very latest, on December 3, 201[3], when Plaintiff appeared in court.  Thus, Plaintiff's claim became time-barred on December 3, 2016."  (*Id*. at 18.)  Moreover, as to the fourth cause of action, Judge Dancks also found that Plaintiff's claims were time-barred.  (*Id*. at 19.)

Plaintiff's fifth and sixth causes of action related to criminal charges.  (*Syfert II*, Dkt. No. 1 at 12.)  More specifically, Plaintiff alleged that he had been denied a speedy trial and maliciously prosecuted.  (*Id*.)  Judge Dancks recommended dismissal for "fail[ure] to state a claim upon which relief may be granted because Plaintiff did not receive 'a favorable termination' of the criminal proceedings."  (*Syfert II*, Dkt. No. 4 at 19-22.)

4

Judge Dancks also noted that while Plaintiff "seeks to hold the City of Rome liable for the above outlined events . . . his complaint fails to allege facts meeting the standard for establishing municipal liability as laid out in *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978)." (*Id*. at 24.)  The Court granted Plaintiff leave to amend (1) his *Monell* claims; (2) time-barred claims; and (3) his conspiracy claims related to the time-barred claims. (*Id*. at 26-27.)  However, the Court noted that "it appears very unlikely that Plaintiff can state federal constitutional claims based upon any of the time-barred claims in his complaint."  (*Id*. at 26.)

On November 9, 2017, Chief U.S. District Judge Glenn T. Suddaby accepted and adopted in its entirety Judge Dancks's Report-Recommendation.  (*Syfert II*, Dkt. No. 8.)  On December 6, 2017, Plaintiff amended his complaint.  (*Syfert II*, Dkt. No. 9.)

On February 12, 2018, U.S. Magistrate Judge Thérèse Wiley Dancks recommended dismissal of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (*Syfert II*, Dkt. No. 11 at 16-17.)  Judge Dancks found that based on a review of the amended complaint (1) the claims regarding the "'mistake' in the legal description of [Plaintiff's] property . . . would have accrued in 1989, and, at the very latest, in 2009, when the City's Department of Code Enforcement informed Plaintiff of the 'mistake'" (*id.* at 9); (2) Plaintiff had not plausibly alleged the elements of fraudulent concealment pursuant to New York law for purposes of equitably tolling the statute of limitations (*id.* at 9-10); (3) there was "no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise patently untimely claims" (*id.* at 10); (4) Plaintiff failed to allege discriminatory animus as required to sufficiently allege a conspiracy claim (*id.* at 11); (5) Plaintiff failed to allege the involvement of two or more persons as required to sufficiently allege a conspiracy claim (*id.* at 11-12); (6) Plaintiff failed to "identify or allege

any facts showing the existence of an official policy or custom of the City of Rome that resulted in the deprivation of his constitutional rights" as required to sufficiently allege municipal liability (*id*. at 13); and (7) Plaintiff has "not alleged any facts . . . plausibly suggesting that he was treated differently from similarly situated individuals" and thus failed to allege an equal protection claim (*id.* at 15).

On May 22, 2018, Chief U.S. District Judge Glenn T. Suddaby accepted and adopted in its entirety Judge Dancks's Report-Recommendation. (*Syfert II*, Dkt. No. 14.) Judgment was entered in favor of Defendant on May 22, 2018. (*Syfert II*, Dkt. No. 15.) The Court's dismissal of Plaintiff's amended complaint in *Syfert II* was affirmed on appeal. *Syfert v. City of Rome*, 768 F. App'x 66 (2d Cir. 2019) (summary order).

On July 1, 2019, Plaintiff commenced this action ("*Syfert III*") by the filing of a Complaint.

## II.    ALLEGATIONS OF THE COMPLAINT

Construed as liberally[1] as possible, Plaintiff's Complaint alleges a history of retaliation, favoritism, and abuse of power by Defendant's employees, including Plumbing Inspector Mike Mondrick and Codes Director Mark Domenico. (*See generally* Dkt. No. 1.) Several pages of the Complaint appear to be the same or substantially similar to portions of other complaints Plaintiff has filed. (*Compare* Dkt. No. 1 at 51-53, *with Syfert II*, Dkt. No. 1 at 9-13; *compare* Dkt. No. 1 at 50, *with Syfert II*, Dkt. No. 9 at 12-14; *compare* Dkt. No. 1 at 54-55, *with Syfert II*, Dkt. No. 9 at 14-16; *compare* Dkt. No. 1 at 56-62, *with Syfert II*, Dkt. No. 9 at 1-11.) Generally, Plaintiff's Complaint alleges as follows. (*See generally* Dkt. No. 1.)

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 [2d Cir. 1994]).

### A.    Building Code Violations and Criminal Charges at the Property

In 1947 the third floor living space at 422 West Embargo Street, Rome, New York 13440 (the "Property") was constructed.  (*Id.* at 3.)  Documentation dated October 4, 1955, and February 7, 1957, reflect that the third floor living space was 100% finished.  (*Id.*)  Beginning in 1961, all finished third floor living spaces were required to have sprinklers and a fire escape. (*Id.*)

On or about March 8, 1984, Plaintiff's wife and mother-in-law bought the Property and applied to the zoning board for approval to convert the Property to a two-family residence.  (*Id.*)[2] On May 24, 1984, the application was approved whereby each of the three floors of the Property would have separate utilities but the "third floor apartment, preexisting, would go along with the second floor apartment but with separate utilities."  (*Id.* at 56.)

At some point in time, documentation regarding the Property was filed with Defendant but a page of the document was left blank and never filled in.  (*Id.* at 3.)  On August 10, 1989, the Property was reassessed and Defendant removed the "100% finished third floor living space. [sic] (inlaw apartment). [sic] (the 2.5 story), from the original legal description of [the] Property dated October 4, 1955 and February 7, 1957."  (*Id.* at 8.)  The residential building section form that removed the third floor from the original legal description was signed by a minor under 18 years of age, who was the child of one of Plaintiff's tenants.  (*Id.*)

---

[2]    It is not clear from the Complaint exactly when Plaintiff (or his wife) purchased the Property, went to the zoning board, or what approval was sought from the zoning board. (*Compare* Dkt. No. 1 at 3 [alleging that "in March 8, 1984. Showing my wife at that time and her mother buying the property and going to the zoning board for approval of making it a two family house"], *with* Dkt. No. 1 at 56 [alleging that "February 1984 I purchased my house at 422 west Embargo St. Rome N.Y. . . . March 7, 1984 I went to the zoning board for permission to convert the one family house to a three family house"].)

In 2008, Plaintiff "evicted a roommate who was living on the third floor.  He was trying to blackmail me. Telling me I had to pay him money to live on the third floor or he was going to call codes and turn[] me in for not having a fire escape or a sprinkler system."  (*Id.* at 57.)

On July 16, 2009, in response to "the blackmailer" (*id.*) Defendant's Director of the Department of Code Enforcement, Mark Domenico, sent Plaintiff a letter stating that "[u]pon his inspection of [Plaintiff's] property it appears [Plaintiff is] using [the Property] as a three family apartment dwelling.  [T]here is no building permit on record that recognizes this change therefore this is an illegal conversion."  (*Id.* at 16; *see also id.* at 55-56.)  As a result of this letter, Plaintiff removed the meter that provided separate utilities to the third floor of the Property.  (*Id.* at 16.)  In addition, Plaintiff spoke with Mark Domenico and directed him to "look up the zoning board minutes of March 1984" because "it is 100% legal."  (*Id.*)

On April 20, 2012, Plaintiff provided a "Notice to Tenant" where he evicted his tenant's sister.  (*Id.* at 21.)  As a result of the "Notice to Tenant," on June 6, 2012, Plaintiff received a "Stop Work Order" letter, that stated that "[t]he work is ordered stopped . . . [because it entails] [c]onstruction without a building permit."  (*Id.* at 19-22.)  Plaintiff alleges that he was installing "a central AC unit on my third floor's roof.. (sic) To air condition the second and third floors."  (*Id.* at 21.)  Plaintiff "spoke to someone in the defendant's codes department.  As the letter directed [him] to do.  That person told [him] the scaffolding was too high."  (*Id.*)  As a result, Plaintiff took the scaffolding down.  (*Id.*)

In November 2013, Plaintiff was charged with building a third floor apartment in 2010 when he "repaired [his] roof and the falling chimney."  (*Id.* at 57.)

On June 30, 2014, the Corporation Counsel, who was prosecuting Plaintiff's criminal charges, declared that it was "ready for trial."  (*Id.* at 59.)  However, over a year went by and

Plaintiff was not notified of his trial date.  (*Id.* at 59-61.)  His court appointed attorney did not return his telephone calls.  (*Id.*)  In August 2015, Plaintiff called the Rome City Court Clerk to request a new court appointed attorney.  (*Id.*)

On November 9, 2015, the judge in Plaintiff's criminal proceeding "said he was dismissing [the] case" because of the statute of limitations.  (*Id.* at 61.)  Because Rome "dropped" the criminal charges, Plaintiff did not see any reason to pursue *Syfert I*.  (*Id.* at 61-62.) On December 22, 2015, judgment in favor of the City of Rome was entered in *Syfert I*.  (*Id.* at 61.)

In January 2016, Plaintiff's court appointed attorney telephoned Plaintiff to tell him that his criminal case was "NOT dismiss[ed]" because "[c]ode violations have NO Statute of Limitation[s]."  (*Id.*)  Plaintiff was advised to "plea[d] guilty" or "be fin[e]d. . . [and] go to jail." (*Id.*)  Plaintiff stated that he wanted to go to trial. (*Id.*)

In February 2016, during a hearing, the criminal court judge told Plaintiff that if he obtained a building permit the judge "would dismiss [the case] again."  (*Id.* at 62.)

On February 17, 2016, Plaintiff's permit application was denied because Plaintiff would not "let [Mr. Domenico] do a whole house inspection from the basement, first floor, 2nd. Floor, and the third floor."  (*Id.*)  Plaintiff "said no way without a search warrant."  (*Id.*)  During a hearing on February 26, 2016, Plaintiff told the criminal court judge that he did not get the permit because "the defendant's codes director would not issue me one unless I let him do a whole house inspection."  (*Id.*)  Thereafter, the prosecuting attorney called Mr. Domenico.  (*Id.*) "When she got back . . . the judge told me to . . . resubmit the form."  (*Id.*)  Plaintiff resubmitted his application.  (*Id.*)

On or about March 2, 2016, Mr. Domenico telephoned Plaintiff and told him about the City's "mistake" that indicated Plaintiff's property was only two stories, instead of two and one-half stories and advised Plaintiff that he "fixed the mistake."  (*Id*.)[3]

On March 4, 2016, Plaintiff was issued the permit.  (*Id.*)  Plaintiff brought a copy of the permit to the criminal court.  (*Id*.)  The criminal court judge "accepted the building permit for the dorm only. And dismiss[ed] the case if [Plaintiff does] not get in trouble for six more months."  (*Id.*)   The criminal court judge then "compared [Plaintiff] to a wife beater."  (*Id*.)

Approximately one week later, a "codes officer . . . came through and inspected the third floor dorm only."  (*Id.*)

The Complaint includes the first page of a Notice of Claim that appears to be filed by Plaintiff with Defendant and received by the City Clerk's Office on May 25, 2016, in which Plaintiff alleged that Mark Domenico "[w]rongfully prosecuted Me for two half years (sic) claiming there is no building permit on record for my finished third floor. (installed in 1953)."  (*Id.* at 26.)[4]  Also on May 25, 2016, Mark Domenico told Plaintiff that he "was going to correct the problem.  He stated that he was the hero by looking up this mistake.  he (sic) said [the] 1952 records stat[e] [that] the house is a 2 1/2 story dwelling."  (*Id.* at 28.)  However, Mark Domenico did not correct the mistake, he did "nothing."  (*Id.*)

In February 2017, Plaintiff paid his taxes at Defendant's assessor's office.  (*Id.* at 23.)  The assessor's clerk who assisted Plaintiff with his taxes obtained the documentation from 1984

---

[3]     It is not clear whether this conversation occurred on March 2, 2016, or March 4, 2016.  (*Compare* Dkt. No. 1 at 62, *with* Dkt. No. 1 at 15.)

[4]     The Complaint also included the first page of several other notices of claim with dates that are illegible and relate to claims that Defendant "failed to inforce (sic) the law" and "[i]ssu[ed] illegal Occupancy" with regard to other properties that Plaintiff does not purport to own.  (Dkt. No. 1 at 46-49.)

(the blank page) and 1989 (change to original legal description) but refused to give Plaintiff copies. (*Id.*)

On March 1, 2017, Defendant's assessor "tried to correct[] 2 story house back to 2 1/2 story house. This misstake (sic) on my new reassessment form . . . [b]ecause it does not include the reconstruction of the third floor and the installation of the fire escape and sprinkler system, which is required for todays (sic) codes of 2017." (*Id.* at 57.)

On March 14, 2017, Plaintiff obtained documents from Defendant through a Freedom of Information Law ("FOIL") request, "[s]tarting any 3 year statute of limitations them. (sic) When I received this information. That is when I found out the full extent of the FRAUD or MISTAKE removing my third floor." (*Id.* at 57.)

### B.    Issues Related to Work as a Plumber

In addition to the issues regarding the code violations at the Property, Plaintiff asserts several allegations regarding issues he had as a plumber working in the City of Rome. (*See generally* Dkt. No. 1.)

Plaintiff had been a vendor for Defendant since 1994. (*Id.* at 8.) However, beginning in 2007, Defendant stopped hiring Plaintiff because "coincidentally" in 2007, Mike Mondrick was hired as Defendant's new plumbing inspector. (*Id.*) However, the animosity between Plaintiff and Mike Mondrick began in 2005, when Plaintiff "kicked [Mike Mondrick] off [his] land . . . [f]or stealing [his] trees . . . without [his] permission or knowledge." (*Id.* at 41.) Then, in 2007 "[a]t the defendants (sic) codes department's office. [Plaintiff] recognized [Mondrick] as the man taking [his] trees in 2005. [Plaintiff] blew up and yell[ed] at [Mondrick] in the office." (*Id.*)

On March 20, 2008, Mike Mondrick signed Plaintiff's plumbing license, 80 days late because licenses expire on January 1 every year. (*Id.* at 45.) As a result, Plaintiff "lost a big job"

and when he complained to Defendant's employees, the employees merely "laughed and said 'that was a little mistake.'"  (*Id.*)

On October 6, 2009, Plaintiff received a receipt in the amount of $25.00 for plumbing permit # PP120, but he "never paid the fee for plumbing permit # pp120. . . . [because] [t]he plumbing inspector told [him that he] did not have to pay [the] fee, the previous plumber paid [the] fee."  (*Id.* at 28.)  In addition, after Plaintiff repaired "a broken . . . 4 ft. pipe" for a customer, Mike Mondrick ordered Plaintiff to conduct an "inspection" by "[f]ill[ing] all [the] pipes in [a] house untill (sic) water is coming out of [the] Roof vint (sic) pipe (2 Story House 100 years old)."  (*Id.* at 28-29.).  As a result of this additional inspection, Plaintiff told the customer "now the price had to be $3,500.00."  (*Id.* at 29.)  However, another plumber was not required to conduct this inspection and therefore could complete the same repair for $1,500.00.  (*Id.*)  At some point Plaintiff was issued a check he was not entitled to in the amount of $25.00 that was "maybe . . . a tip for playing their game. or (sic) their scam" but he "returned the check and made a stink about it."  (*Id.*)

Despite being a resident of the City of Rome and having "two city licenses Utica and Rome," Plaintiff has never been asked to sit on the Plumbing Board.  (*Id.* at 40-41.)

On March 1, 2011, Mike Mondrick tried to "take away [Plaintiff's] master license" and make him take the test again because he did not pay a required fee.  (*Id.* at 41.)  However, Plaintiff had already paid the fee.  (*Id.*)

On February 10, 2012, "a voided check [was] issued by [Defendant] to [Plaintiff's company]" in the amount of $25.00 but no refund was deserved because Plaintiff "never paid for the fee, as the plumbing permit 'did not' show."  (*Id.* at 28.)

By the year 2022, Defendant has been manded by New York State to install 30,000 water meters for its water customers and this project will cost Defendant approximately $30,000,000.00. (*Id.* at 33.) Mike Mondrick's company will receive preferential treatment and likely receive a large portion, if not all, of the work associated with this project. (*Id.* at 33-34.) Moreover, Mike Mondrick is eliminating competition and on March 9, 2017, he removed another plumber's (Michael Caringi) master plumber's license. (*Id.* at 34, 36-40.)

### C. Causes of Action

Plaintiff asserts the following six causes of action: (1) discrimination and interference with civil rights; (2) civil action for deprivation of rights; (3) Defendant's code enforcement polices and procedures are unconstitutional; (4) Defendant's plumbing and plumber licensing policies and procedures are unconstitutional; (5) Plaintiff was denied a speedy trial; and (6) malicious prosecution. (*Id*. at 52-53.)

### D. Relief Sought

Plaintiff seeks millions of dollars in damages including $1,500,000.00 in "actual damages" for "[e]stimated future income lost . . . for Rome's 30,000 water meters being installed by 2022." (*Id*. at 63.) In addition, "for being illegally and unconstitutionally remov[ed] . . . from the Rome Master Plumbers List since January 2011 to 2016" Plaintiff seeks "[e]stimated past income at $200,000/year for six years. a (sic) total of $1,200,000 in actual damages." (*Id.*) Moreover, Plaintiff seeks damages for "loss of my time, damage to my health, loss of my reputation, humiliation, the mental anguish, fear and despair I suffered during from (sic) November 2013 to March 2016" in the amount of "$1,000,0000 (sic)." (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## III.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $400, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[5]  After reviewing Plaintiff's *in*

*forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[6]

Plaintiff is advised that the ability to litigate an action without prepayment of fees is a

privilege that can be denied, revoked, or limited based upon a showing of prior abuses. *See In re*

*Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to

proceed IFP where the Court found that, like the previous twenty-two petitions filed during the

three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco*

*v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to

proceed IFP is a privilege provided for the benefit of indigent persons.").  The authority of a

court to deny or limit a request to proceed IFP is implicit in the permissive, rather than

compulsory, language of the controlling statute, which provides that "any court of the United

States *may* authorize the commencement, prosecution or defense of any suit, action or

---

[5]     The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City*
*of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[6]     Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been
granted, he will still be required to pay fees that he may incur in this action, including copying
and/or witness fees.

proceeding, civil or criminal, or appeal therein, without prepayment of fees or security

therefor[.]"  28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183

(1989).  For this reason, courts are regarded as possessing discretionary authority to deny IFP

status to litigants who have abused the privilege.  *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308,

309-310 (D.C. Cir. 2008) ("This Circuit grants IFP status to various plaintiffs, but asserts its

discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content,

frequency, and disposition of their previous filings[.]' ") (quoting *Butler v. Dep't of Justice*, 492

F.3d 440, 444-45 (D.C. Cir. 2007).

Plaintiff's litigation history in this district suggests that he is on the brink of being found

to have abused the privilege of proceeding IFP.  Plaintiff has filed three lawsuits against the City

of Rome in approximately four years alleging virtually the same grievances.  *See, supra,* Parts I.

and II. of this Order and Report-Recommendation.  In the two prior actions, Plaintiff requested,

and was granted, permission to proceed without prepayment of fees.  Both of those actions were

dismissed following the Court's review of the substance of the factual allegations in the

complaints in accordance with 28 U.S.C. § 1915(e).

Common to all of the actions filed by Plaintiff in this district (including, as will be

discussed below, the current Complaint under consideration in this report) is his failure to

include factual allegations in his complaints that demonstrate entitlement to relief, and the

vagueness concerning the claims that he purports to assert.  Accordingly, Plaintiff is hereby

warned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the

court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any

request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a

filing injunction be issued against Plaintiff, barring him from filing any future lawsuits in this district without prior permission.

## IV.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 [2d Cir. 1998]); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes

of action be dismissed.

Plaintiff brings this action against Defendant pursuant to 42 U.S.C. § 1983.  "To state a

valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was

attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. Cty.*

*of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 [2d

Cir. 1994]).  Thus, § 1983 does not create any independent substantive right, but rather "provides

a civil claim for damages" to "redress . . . the deprivation of [federal] rights established

elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A.    Time-Barred Claims

The statute of limitations for a § 1983 action accruing in New York is three years.  *See*

*Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  The statute of limitations begins

to run on the date that the plaintiff's claims accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Federal law governs the accrual date.  *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992).

Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason

to know the injury which is the basis of his action."  *Covington v. New York*, 171 F.3d 117, 121

(2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 [2d Cir. 1980]).  That is

so even if "the full extent of the injury is not then known or predictable."  *Fahs Const. Group,*

*Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam).  "[S]tate tolling rules determine

whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 [2d Cir. 2002]).

A claim for malicious prosecution accrues when there is a "favorable termination of criminal proceedings" against the plaintiff. *Norwood v. Salvatore*, 12-CV-1025, 2013 WL 1499599, at *15 (N.D.N.Y. Apr. 10, 2013) (D'Agostino, J.). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion–typically at arrest–against the plaintiff." *Tirse v. Gilbo*, 15-CV-0987, 2016 WL 4046780, at *16 (N.D.N.Y. July 27, 2016) (Suddaby, C.J.) (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 [S.D.N.Y. 1997]).

Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert I*, Dkt. No. 5 (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915[e][2][B]); *Syfert II*, Dkt. No. 8 (same); *Syfert II*, Dkt. No. 14 (same).

Plaintiff commenced this action on July 1, 2019. (Dkt. No. 1.) Three years prior to the filing date is July 1, 2016. Any causes of action in Plaintiff's Complaint that accrued before July 1, 2016, are likely barred by the statute of limitations. As was the case in *Syfert I* and *Syfert II*, the Court assumes that events from 1984 through 2006 are merely an explanation of how the alleged animosity between Plaintiff and Mr. Mondrick began.

Much like his complaints in *Syfert I* and *Syfert II*, most of the incidents listed in Plaintiff's Complaint are untimely because they occurred before July 1, 2016. (Dkt. No. 1.)

More specifically, Plaintiff alleges that (1) Mr. Domenico accused Plaintiff of having an "illegal" third floor apartment in 2009; (2) Mr. Mondrick ordered Plaintiff to perform an inspection when another plumber was not required to do so in 2009; (3) Plaintiff received a check from Defendant in the amount of $25.00 as reimbursement for a fee that he never paid in 2009; (4) Mr. Mondrick sent a fraudulent letter telling Plaintiff that he would have to "re-test for the plumbing exam" in 2011; (5) Code Enforcement issued a "stop work" order on his air conditioning installation in 2012; (6) Plaintiff received a voided check in the amount of $25.00 that he was not entitled to in 2012; (7) Plaintiff was charged with false criminal code violations in 2013; and (8) those criminal code violations were dismissed in 2015 but "revived" in January 2016. All of the conduct occurring before July 1, 2016, is barred by the statute of limitations.

Plaintiff's allegations do not amount to a "continuing violation." The continuing violation doctrine, where applicable, is an "exception to the normal knew-or-should-have-known accrual date" if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 [2d Cir. 1999]). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but only to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 [2002]). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable . . . claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged violation. *Id.* (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250). A continuing violation cannot "be established merely

because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*,
186 F.3d at 250 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 [2d Cir. 1997]).

The continuing violation doctrine is generally disfavored in this Circuit. *See Town of
Ramopo v. Town of Clarkstown*, 16-CV-2004, 2017 WL 782500, at *5 (S.D.N.Y. Feb. 27, 2017);
*Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting *Trinidad v.
N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 [S.D.N.Y. 2006]) ("[C]ourts in the Second
Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of
compelling circumstances.'").

Here, all of the above incidents occurred prior to July 1, 2016. Even assuming that
Plaintiff was being targeted for mistreatment, each act is a discrete event, including facts
resulting in Plaintiff's criminal charges.  Most of the alleged conduct occurred many months, if
not years, apart. The fact that Mr. Domenico accused Plaintiff of having an "illegal" third floor
in 2009, or that Plaintiff had to perform a water test in 2009, while another plumber did not, or
that Plaintiff received a check in the amount of $25.00 that he was not entitled to in 2009, or that
was told he would have to re-test for the plumbing exam in 2011, or Plaintiff was issued a stop
work order for the air conditioning installation in 2012, or that Plaintiff received a voided check
in the amount of $25.00 in 2012, or that Plaintiff was issued a Summons based on false criminal
charges in 2013, or that those criminal charges were dismissed in 2015 and revived in January
2016 are all discreet acts, which if actionable at all, would have been actionable at the time they
occurred.  To be sure, Plaintiff seems to have issues with Mr. Mondrick and other employees of
the City, but the Court finds no compelling circumstances present to warrant applying the
continuing violation doctrine.

In addition, there is no indication at this time that this is one of those extraordinary cases in which equitable tolling should apply.

A § 1983 claim accrues–and the limitations period begins to run–"when the plaintiff has a complete and present cause of action, that is, when the wrongful act or omission results in damages." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) ("The cause of action accrues even though the full extent of the injury is not then known or predicable."). Stated differently, in determining when the statute of limitations begins to run, the "proper focus is on the time of [wrongful] act, not the point at which the consequences of the act become painful." *Bailey v. Tricoll*a, 94-CV-4597, 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 [1981]).

According to Plaintiff:

> Starting in 1989, the defendant began reassessment of all property [located in the City of Rome] to fair market value. It was expected to take three years. (Somewhere around 30,000 properties.) My house was done Aug. 10, 1989. The mistake was made then. Removing my third floor inlaw's apartment. Also removing a 100% finish attic in the 2 1/2 stories house from my legal description of my property dated October 4, 1956 and dated February 7, 1957.

(Dkt. No. 1 at 56-57 [unaltered text; errors in original].)

Plaintiff further claims that by letter dated July 16, 2009, Rome's Director of Code Enforcement informed Plaintiff that "upon his inspection of my property it appears you are using as a three family apartment dwelling. there is no building permit on record that recognizes this change therefore this is an illegal conversion." (Dkt. No. 1 at 57 [unaltered text; errors in original].) At that time, after obtaining permission from the zoning board on May 24, 1984, Plaintiff had three separate utilities. (*Id.*) However, "to

make [the Director of Code Enforcement] happy[,] [Plaintiff] removed the third floor

separate utilities." (*Id.*)[7]

Thus, to the extent Plaintiff traces all of his "legal problems" due to the "mistake"

in the legal description of his property made in 1989, the claims, if any, would have

accrued in 1989, and, at the very latest, in 2009, when Defendant's Department of Code

Enforcement informed Plaintiff of the "mistake" in the legal description of his property.

As such, the Court finds that the statute of limitations should not be tolled on that basis.[8]

Plaintiff has also included an excerpt from the California Civil Jury Instructions,

Affirmative Defense–Statute of Limitations–Fraud or Mistake. (*Id*. at 50.) Plaintiff does

not, however, offer any reason as to why or how this section would apply to his claims.[9]

Under New York law, "the doctrine of fraudulent concealment prevents a party

from fraudulently concealing wrongdoing until after the tolling of the statute of

limitations." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002) (McAvoy, J.).

"To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an

equitable tolling of the statute of limitations], a plaintiff must establish three elements,

including: (1) wrongful concealment by defendants [of their actions], (2) which prevented

---

[7]     The letter of July 16, 2009 states, in relevant part, "According to our official city records, the dwelling located at 422 W. Embargo Street has a property classification of Two(2) (sic) family residence. Upon inspection of this property from the exterior right of way, it appears to be utilized as a Three (3) family apartment dwelling. There is no building permit on record that recognizes this change, therefore, it is an illegal conversion." (Dkt. No. 1 at 18.)

[8]     In addition, Plaintiff's allegation that on or about March 1, 2017, Defendant's assessor tried to correct the "mistake" on a new assessment form (Dkt. No. 1 at 57), does not reset or re-start the statute of limitations.

[9]     Plaintiff also included this excerpt in his Amended Complaint in *Syfert II* (*Syfert II,* Dkt. No. 9 at 12-14) and did not explain there why or how the excerpt was applicable. (*Syfert II*, Dkt. No. 11 at 9.)

plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013) (citing *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 [2d Cir. 1998]; *Butala v. Agashiwala*, 916 F. Supp. 314, 319 [S.D.N.Y. 1996]). "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (citing *Pearl*, 296 F.3d at 82; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 [7th Cir. 1990]).

Here, the Court finds Plaintiff has not plausibly alleged any of the three elements to invoke this doctrine.

Further, although not raised by Plaintiff, having carefully reviewed the Complaint, the Court discerns no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise patently untimely claims. Under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights," such that "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85. In a related but slightly different vein, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.3d 76, 85 (2d Cir. 1986); *see also Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the part of the plaintiff in

bringing an action . . . is an essential element of equitable relief." *Abba*s, 480 F.3d at 642

(quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D. 3d 793, 796 [N.Y. App. Div. 3d

Dep't 2005]).

As a result, the Court finds Plaintiff is not entitled to tolling and, thus, his claims

based on events that occurred before July 1, 2016, are time-barred.

Therefore, the Court recommends dismissing Plaintiff's claims based on the above time-

barred events pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### B.    Code Enforcement and Procedures

By his third cause of action, Plaintiff challenges the constitutionality of Defendant's code

enforcement policies and procedures.  (Dkt. No. 1 at 52.)  More specifically, Plaintiff contends

that the June 6, 2013, stop work order was "exceptionally vague."  (*Id*.)  Plaintiff claims that City

employees "misinformed [him] over the phone that the problem was the scaffolding; when

apparently it wasn't."  (*Id*.)  Plaintiff claims that "[n]o policy was in place to correctly and with

specificity communicate exactly what violated the Rome City Codes; and exactly what [he]

needed to do to fix the problem."  (*Id*.)  Nor was there a "follow-up procedure" in place to "make

sure" Plaintiff knew what was expected of him.  (*Id*.)   Plaintiff alleges he "was given no

opportunity to correct the problem . . . because it was never communicated to [him]."  (*Id*.)

According to Plaintiff, it was not until December 3, 2013, when Plaintiff appeared in criminal

court that he learned removing the scaffolding did not resolve the issue.  (*Id*.)

In addition, Plaintiff alleges that Rome's "code enforcement policies and procedures open

the door for Rome codes officials to arbitrarily and discriminatorily make accusations of code

violations; and then to arbitrarily and discriminatorily enforce and prosecute those violations as

they did with [Plaintiff]."  (*Id*.)  Plaintiff thus claims that "Rome's code enforcement policies and

procedure (or lack thereof) encourage its employees and officials to abuse the authority of their offices of public trust to discriminate against the citizens of Rome based on their own biases." (*Id.*)

Here, Plaintiff's claim, if actionable at all, accrued on June 6, 2013, when Rome issued the stop work order or, at the very latest, on December 3, 2013, when Plaintiff appeared in court. Thus, Plaintiff's claim became timed-barred on December 3, 2016. The continuation violation doctrine and tolling are inapplicable to this claim for the same reasons discussed in Section V.A. Therefore, without addressing the merits, the Court recommends dismissing Plaintiff's third cause of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### C. Rome's Plumbing and Plumber Licensing Policies and Procedure

Similarly, by his fourth cause of action Plaintiff claims that "Rome's policies and procedures regarding the licensing of plumbers, Rome's Master Plumber list; and the methods and means used by Defendant Rome to bid and award plumbing contracts are unconstitutional." (Dkt. No. 1 at 53.) As discussed above, Plaintiff's claim, if actionable at all, accrued on March 1, 2011, when Mr. Mondrick's sent a letter stating that Plaintiff's plumbing license was being "taken away" for failure to pay the annual renewal fee. (Dkt. No. 1 at 41.) As such, this claim became timed-barred on March 1, 2014.

Plaintiff also alleges that "New York State is mandating in the year 2022 for ROME, New York to have installed 30,000 water meters.. For its water customers." (Dkt. No. 1 at 33 [unaltered text; errors in original].) Plaintiff alleges that "1/2 of all water meter money [is] going to Mike Mondrick's Plumbing & Heating" and that "Mike Mondrick's preferential treatment plan. Might throw a meter or two.. to some other plumbers.. (only plumbers he likes ).." (*Id.* at 33-34 [unaltered text; errors in original].) Further, Plaintiff alleges "I (plaintive) could have

had.. A big piece of this pie .. If I want to play his game or his scam. back in 2012" but "Mike Mondrick is removing his competition One way or Another" because another plumber, Michael Caringi lost his plumber's license.  (*Id.* at 34-40 [unaltered text; errors in original].)

However, the Complaint does not allege that Plaintiff has bid or applied for any contract with Defendant that he did not receive.  (*See generally* Dkt. No. 1.)  The Complaint also does not allege that bidding for this mandate of 2022 has even begun.  (*Id.* at 33-34 [referring to this grievance in the future tense]; *id*. at 63 [seeking "[e]stimated future income lost . . . for Rome's 30,000 water meters being installed by 2022."].)  As a result, Plaintiff does not have standing to assert this conjectural or hypothetical claim.  *See Port Washington Teachers' Ass'n v. Bd. of Educ. of the Port Washington Union Free Sch. Dist.*, 478 F.3d 494, 498 (2d Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he irreducible constitutional minimum of standing . . . [requires that] there . . . be an injury in fact . . . which is . . . actual or imminent, not conjectural or hypothetical.")

In addition, Plaintiff alleges that on March 9, 2017, Mr. Mondrick "removed Michael Caringi's master plumbers license illegally."  (Dkt. No. 1 at 40.)  However, Plaintiff lacks standing to assert claims on behalf of Michael Caringi.[10]

Finally, the Court finds the continuing violation doctrine and equitable tolling are inapplicable to this claim for the same reasons discussed in Section V.A.

---

[10]     "The doctrine of Article III standing requires a litigant to demonstrate that (1) he suffered an actual or threatened injury as a result of the illegal conduct of the defendants, (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision."  *Hui Yu v. United States Dep't of Homeland Sec.*, 568 F. Supp. 2d 231, 233 (D. Conn. 2008) (citing *Velley Forge Christian Coll. V. Am. United for Separation of Church and State*, 454 U.S. 464, 472 [1982], *abrogated in part on other grounds by Bowen v. Kendrick*, 487 U.S. 589 [1988]).

As a result, the Court recommends dismissing Plaintiff's fourth cause of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### D.    Malicious Prosecution and Speedy Trial Claims

By his fifth and sixth causes of action, Plaintiff claims that the "manner in which Defendant Rome prosecuted [him] was malicious and unconscionable."  (*Id.* at 53.)  More specifically, Plaintiff claims that he was caused "to suffer nearly three years of constant threats to [his] liberty."  (*Id.*)  Plaintiff "lived in fear and extreme mental anguish and distress throughout this period . . . [which] had a negative impact on [his] over-all health."  (*Id.*)  Plaintiff claims that he was "humiliated" and his "reputation has been dragged through the mud for no just cause."  (*Id.*)  Plaintiff posits that "prosecution for a code violation that never actually occurred that extends beyond two years has got to be unconstitutional."  (*Id.*)

To state a §1983 claim for malicious prosecution, a plaintiff must allege the four elements of a malicious prosecution claim under New York law– "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions"–as well as a violation of the plaintiff's rights under the Fourth Amendment.  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).  As set forth above, a malicious prosecution claim accrues when there is a "favorable termination of criminal proceedings" against the plaintiff.  *Norwood*, 2013 WL 1499599, at *15.

According to Plaintiff, the criminal charges at issue were "dismissed" on March 4, 2016, "if [Plaintiff] do[es] not get in trouble for six more months."  (Dkt. No. 1 at 62.)  The Court finds Plaintiff's malicious prosecution claim fails to state a claim upon which relief may be granted because Plaintiff did not receive "a favorable termination."

As discussed above, Plaintiff claims that in February 2016, the judge handling his criminal proceeding told Plaintiff to get a permit for the third floor dorm and windows to satisfy the case against him.  (Dkt. No. 1 at 62.)  On March 4, 2016, Plaintiff was issued a permit for the dorm window.  (*Id.*)  Plaintiff brought a copy of the permit to the judge, who told Plaintiff that "if [he did not] get into trouble for six months it was dismissed like it never happened." (*Id.*)  As such, Plaintiff apparently received an adjournment in contemplation of dismissal.  See N.Y. Crim. Proc. Law § 170.55 (McKinney 2017).

However, "[i]t is black letter law that, under New York law, 'an adjournment in contemplation of dismissal is not considered to be a favorable termination.'"  *Lopez v. City of New York*, 15-CV-1650, 2017 WL 213243, at *4 (S.D.N.Y. Jan. 10, 2017) (quoting *Shain v. Ellison*, 273 F.3d 56, 68 [2d Cir. 2001], *abrogated on other grounds by Florence v. Bd. of Choses Freeholders of Cty. of Burlington*, 566 U.S. 318 [2012]); *see also Smith-Hunter v. Harvey*, 712 N.Y.S.2d 438, 442 (N.Y. 2000) ("[A]n adjournment in contemplation of dismissal–a disposition that requires the consent of the prosecutor, the accused and the court–does not qualify as a favorable termination.") (internal citation omitted).

Similarly, "in order to adequately plead claims under Section 1983 that he was tried and convicted in violation of his Sixth Amendment right to a speedy trial, Plaintiff must allege that the state court the criminal proceedings terminated in his favor."  *Bussey v. Devane*, 13-CV-3660, 2013 WL 4459059, at *5-6 (E.D.N.Y. Aug. 16, 2013) (citing *Montane v. Pettie*, 10-CV-4404, 2012 WL 1617713, at *2 [E.D.N.Y. May 8, 2012]); *see also Corley v. Vance*, 15-CV-1800, 2015 WL 4164377, at *3 (S.D.N.Y. June 22, 2015) (citing *Heck*, 512 U.S. at 484-87) ("As pleaded, [the plaintiff's] speedy trial, false arrest, false imprisonment, and malicious prosecution claims are barred because his criminal proceedings were not terminated in his favor."); *Davis v.*

*New York*, 90-CV-6170, 2003 WL 1787151, at *1 (S.D.N.Y. Apr. 2, 2003) (dismissing a speedy

trial claim where the plaintiff could not show that his conviction had been invalidated).

Plaintiff also claims that "Defendant Rome prosecuted me for a minor offense from

December 2013 until March 2016[,] well beyond the statutory time limits permitted for

prosecution" under New York Law.  (Dkt. No. 1 at 53.)  To support this allegation, Plaintiff

relies on Article 30 of New York Criminal Procedure, which provides, in relevant part, "a

prosecution for a misdemeanor must be commenced within two years after the commission

thereof; a prosecution for a petty offense must be commenced within one year after the

commission thereof."  N.Y. Crim. Proc. Law §§ 30.10(2)(c)-(d). The Court finds this argument

misplaced.  First, based on the facts as pleaded, it appears that the prosecution was in fact

commenced within the statutory time limit.  Second, in any event, a violation of New York

Procedural Law "is not in itself a violation of the Constitution or federal law, an element of a

section 1983 claim."  *Fobbs v. City of New York*, 15-CV-6736, 2017 WL 2656207, at *3

(S.D.N.Y. June 19, 2017).

As a result, the Court recommends dismissing Plaintiff's fifth and sixth causes of action

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### E.    Conspiracy Claims

By his first and second causes of action, Plaintiff alleges in conclusory fashion that

"Defendant Rome and its employees engaged in a pattern of cooperative activities designed to

interfere in the exercise of [his] civil rights and that these activities in fact did deprive [Plaintiff]

of [his] civil rights under the United States Constitution[.]"  (Dkt. No. 1 at 51; *see also id.* at 52

["Employees named herein have . . . collectively engag[ed] in a pattern of actions that caused me

to be injured in my person and my property, and that deprived me of having and exercising the rights or privileges of a citizen of the United States."].)

The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

To state a claim for a conspiracy under § 1985(3), a plaintiff must allege "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (summary order) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 [1983]).

Vague and conclusory allegations that defendant has engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sept. 23, 2008) (quoting *Twombly*, 550 U.S. at 555). Moreover,

conspiracy claims under §§ 1983 and 1985 "fail[] as a matter of law where there is no underlying constitutional violation." *Tirse*, 2016 WL 4046780, at *18.

Here, inasmuch as the Court is recommending dismissal of the predicate claims, the Court also recommends dismissing Plaintiff's conspiracy claims under §§ 1983 and 1985. *See, e.g., McGee v. Doe*, 568 F. App'x 32, 36, 39 (2d Cir. 2014) (affirming dismissal of malicious prosecution claim and conspiracy claim predicated upon malicious prosecution where the plaintiff did not receive a favorable termination); *LaRocco v. Jackson*, 10-CV-1651, 2012 WL 947554, at *3 (E.D.N.Y. Mar. 19, 2012) ("Because [the plaintiff's] § 1983 claims for false arrest and malicious prosecution are dismissed, his claim for conspiracy to commit those violations must be dismissed as well.") (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 [2d Cir. 2001]; *Pugh v. New York City*, 01-CV-0129, 2002 WL 398804, at *2 n.4 [E.D.N.Y. Jan. 15, 2002]).

Additionally, the Court finds that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy. Further, Plaintiff has not alleged any race or class-based animus as required to support a § 1985 conspiracy claim. "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. N.Y.S. Dep't. of Corr. Servs*., 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (Smith, M.J.) (citing *Segreto v. Kirschner*, 977 F. Supp. 553, 565 [D. Conn. 1997]; *Gay Veterans Ass'n, Inc. v. American Legion,* 621 F. Supp. 1510, 1515 [S.D.N.Y. 1985]; *Orshan v. Anker*, 489 F. Supp. 820, 823 [E.D.N.Y. 1980]).

Moreover, in the alternative, even if Plaintiff's conspiracy claims were found to be more than conclusory as pleaded, Plaintiff's claims would likely be barred by the "intra-agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co*., 04-CV-1453, 2005

WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.) (dismissing the plaintiff's conspiracy claims where the defendants were officers of the City of Syracuse and the plaintiff did not allege that the individual defendants had a personal interest in their alleged conspiracy); *see also Little v. City of New York,* 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (dismissing the plaintiff's conspiracy claims where the officers were part of a single corporate entity, the City of New York, and plaintiff did "not provide any evidence to suggest that either of the officers were motivated by an independent personal stake in his arrest and prosecution."). Generally, that doctrine provides that officers, agents, or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth*., 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002).

Therefore, the Court recommends dismissing Plaintiff's first and second causes of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### F.    Municipal Liability

Plaintiff seeks to hold Defendant, a municipal entity, liable for the above outlined events. However, his complaint fails to allege facts meeting the standard for establishing municipality liability as laid out in *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

In order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must

establish a causal connection–an 'affirmative link'–between the policy and the deprivation of his

constitutional rights.") (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 [1985]).

Indeed, municipalities may only be held liable when the municipality itself deprives an

individual of a constitutional right; it "may not be held liable on a theory of respondeat superior."

*Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

An "official policy or custom" can be shown in several ways: "(1) a formal policy

officially endorsed by the municipality; (2) actions taken by government officials responsible for

establishing municipal policies related to the particular deprivation in question; (3) a practice so

consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive

knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or

supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights

of those who come in contact with the municipal employees."  *Dorsett-Felicelli, Inc. v. Cty. of

Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (internal citations omitted).

Upon review, Plaintiff fails to identify or allege any facts showing the existence of an

official policy or custom of Defendant that resulted in the deprivation of his constitutional rights.

Plaintiff makes the following four allegations: (1) "[t]his was all done to me becuase (sic) of the

mistake on my legal land destruction (sic) removing all my third floor in 1989 by city employees

not properly train[ed] or educated" (Dkt. No. 1 at 15); (2) "[t]he defendant hired incompetent

people in 1989 for the reassessment.  This is why the defendant is liable for what they did" (*id*. at

16); (3) "[t]his proves that someone (defendant[']s employees) are not properly trained, not

supervised or are incompetent of doing there (sic) job that they were hired for" (*id*. at 22); (4)

"[a]ll these untrained, unsupervised codes director, officers, plumbing inspector in charge.

Making all is money.." (*id*. at 33).

However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

Here, Plaintiff's conclusory allegations that Defendant failed to properly hire, supervise, and train subordinates, "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face." *Gray-Davis v. New York*, 14-CV-1490, 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (Suddaby, J.); *see Hawthorne v. City of Albany*, 17-CV-0716, 2017 WL 6520774, at *5 (Suddaby, C.J.) (N.D.N.Y. Nov. 14, 2017) (same); *see also Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees).

Even if Plaintiff's claims could be construed as plausibly alleging a custom or policy, Plaintiff has not pleaded facts plausibly suggesting that he was denied a constitutional right. Liberally construed, Plaintiff alleges Defendant violated his rights, "directly and indirectly" to equal protection of the laws. (Dkt. No. 1 at 52.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars

the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 [2d Cir. 1980]).  Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Plaintiff has not alleged any facts in the Complaint plausibly suggesting that he was treated differently from similarly situated individuals.

For all of these alternative reasons, the Court recommends that the action be dismissed against Defendant for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B).  *See Plair*, 789 F. Supp. 2d at 469 ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard[.] "); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"); *Irvine v. City of Syracuse*, 14-CV-1565, 2015 WL 2401722, at *6-7 (N.D.N.Y. May 19, 2015) (McAvoy, J.) (dismissing *Monell* claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim); *Santagata v. City of New York*, 17-CV-3053, 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017) (same).

## VI.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[11]

Generally, a district court should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered.  *Abbas*, 480 F.3d at 640.  However, the same time-barred claims that are dismissed here, have been dismissed three times previously (*Syfert I*, Dkt. No. 4 at 13; *Syfert II*, Dkt. No. 4 at 15; *Syfert II*,

---

[11]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 [2d Cir. 1999], that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim" is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 [2007]), *rev'd on other grounds*, 682 F. App'x 30.

Dkt. No. 11 at 9-10) and it appears that granting Plaintiff leave to amend is unlikely to be productive. Moreover, where claims are time barred and cannot be cured by amendment, dismissal without leave to amend is proper. *See Syfert v. City of Rome,* 768 F. App'x 66, 68 (summary order) (affirming dismissal without leave to amend Plaintiff's time-barred claims in *Syfert II* because (a) the statute of limitations accrued in 2009 when the classification of the Property was disclosed to him, (b) Plaintiff's conclusory allegations of non-disclosure did not amount to fraudulent concealment or the extraordinary circumstances that warrant equitable tolling, and (c) Plaintiff had not exercised reasonable diligence in pursuing his claims as required for application of equitable tolling); *see also Walters v. Indus. Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (holding that a district court may dismiss an action *sua sponte* on limitations grounds when "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted."). As a result, I recommend that Plaintiff's time-barred claims (first, second, and third claims) be dismissed without leave to amend. *See Carrasco v. Annucci,* 17-CV-0246, 2017 WL 6492010, at *2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint").

In addition, a plaintiff should generally be granted leave to amend *Monell* claims that are dismissed pursuant to 28 U.S.C. § 1915. *See Lynch v. Claus,* 13-CV-0830, 2013 WL 4455625, at *4 (N.D.N.Y. Aug. 16, 2013) (Sharpe, C.J.) (affording *pro se* plaintiff an opportunity to amend potential *Monell* claims). However, the same *Monell* claims that are dismissed here, have been dismissed three times previously (*Syfert I*, Dkt. No. 4 at 17-18; *Syfert II*, Dkt. No. 4 at 24-25; *Syfert II*, Dkt. No. 11 at 12-15) and it appears that granting Plaintiff leave to amend is unlikely to be productive. As a result, I recommend that Plaintiff's time-barred claims be

dismissed without leave to amend. *See Briel v. D'Amber,* 12-CV-3546, 2012 WL 3698735, at *3 (E.D.N.Y. Aug. 21, 2012) (dismissing the plaintiff's *Monell* claim with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) where the plaintiff failed to amend his complaint to allege a plausible claim against Nassau County).

For the reasons set forth in Part V.D. of this Order and Report-Recommendation, the problem with Plaintiff's malicious prosecution and speedy trial claims is substantive, such that better pleading will not cure it. *See Ruffolo,* 987 F.2d at 131. Therefore, it is recommended that Plaintiff's malicious prosecution and speedy trial claims be dismissed without leave to amend. *See, e.g., LaRocco,* 2012 WL 947554, at *3-4 (dismissing malicious prosecution claim with prejudice where the plaintiff could not plead essential elements of the claim, including favorable discharge). Likewise, it is recommended that Plaintiff's conspiracy claims predicated upon his malicious prosecution and speedy trial claims be dismissed without leave to amend. *Id.* (dismissing conspiracy claim predicated on malicious prosecution with prejudice).

However, I recommend that Plaintiff's (fourth) claim that Defendant's plumbing and plumber licensing policies and procedures are unconstitutional, be dismissed without prejudice. For the reasons set forth above in Part V.C. of this Order and Report-Recommendation, the Court found that Plaintiff lacked standing to assert two allegations with regard to this claim. "Dismissal of a [claim] for failure to allege standing should be without prejudice because the court lacks subject matter jurisdiction." *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206 (2d Cir. 2019) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 [2d Cir. 2017]). As a result, I recommend dismissal of Plaintiff's fourth claim without prejudice.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 [2d Cir. 1987]); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VII.    SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that he meets the requirements for IFP status, and therefore grant his motion for leave to proceed without prepayment of fees. Turning to the merits of Plaintiff's Complaint, I recommend that Plaintiff's Complaint be dismissed in its entirety and that Plaintiffs first, second, third, fifth, and sixth claims be dismissed without leave to amend. However, I recommend that Plaintiff's fourth claim be dismissed with leave to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is

**GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD**

Plaintiff's first, second, third, fifth, and sixth claims pursuant to 28 U.S.C. § 1915(e)(2)(B) for

failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**

Plaintiff's fourth claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon

which relief may be granted; and it is further.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within

which to file written objections to the foregoing report.[12]  Such objections shall be filed with the

Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this

order, report, and recommendation on the docket of this case and serve a copy upon the parties in

accordance with the local rules.[13]

---

[12]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

[13]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Dated: August 14, 2019
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge