UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK SYFERT,

                    Plaintiffs,

v.                                       6:19-CV-0775
                                       (GTS/ML)
CITY OF ROME,

                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:

MARK SYFERT
  Plaintiff, *Pro Se*
422 W. Embargo St. #2
Rome, NY 13440

HON. GERARD F. FEENEY, II            GERARD F. FEENEY, II, ESQ.
Corporation Counsel for City of Rome
  Counsel for Defendant
198 North Washington Street
Rome City Hall
Rome, NY 13440

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this *pro se* civil rights action filed by Mark Syfert

("Plaintiff") against the City of Rome ("Defendant"), are three motions: (1) Defendant's motion

for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 72); (2) Plaintiff's motion for

summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 74); and (3) Plaintiff's motion for

judicial notice of adjudicated facts pursuant to Fed. R. Civ. P. 201 (Dkt. No. 75).[1] For the

_____

[1]     The Court notes that Plaintiff's filing originally included a motion for leave to amend his
complaint and a motion to extend discovery. (Dkt. No. 74.) On September 22, 2021, this Court

reasons set forth below, Defendant's motion for summary judgment is granted, and Plaintiff's

motions are denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint alleges that Defendant

violated the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution when it omitted Plaintiff's name from Defendant's 2016 and 2017 Licensed

Plumber Lists (the "Lists"). (Dkt. No. 9 [Plf.'s Am. Compl.]; Dkt. No. 10, at 7 [Rep.-Rec. on

Plf.'s Am. Complaint].)[2] This lawsuit is the third one filed by Plaintiff against the City of Rome

since September 2015. (Dkt. No. 4 [highlighting fact that "Plaintiff has filed three lawsuits

against the City of Rome in approximately four years alleging virtually the same grievances"].)

### B.      Relevant Procedural History

On September 13, 2021, Defendant filed its motion for summary judgment. (Dkt. No.

72.) On September 16, 2021, Plaintiff filed his motion for summary judgment and motion for

judicial notice of adjudicated facts. (Dkt. Nos. 74-75.) On October 7, 2021, Defendant filed its

---

denied without prejudice the portions of Plaintiff's motion requesting leave to amend his
complaint or an extension of discovery as procedurally improper and unsupported by a showing
of cause, leaving the remainder of the motion (i.e., the request to proceed to trial by jury) to be
decided after full briefing on the motion and the parties' motions for summary judgment. (Dkt.
No. 77.) This Decision and Order addresses the remaining portions of Plaintiff's motion.

[2]      After reviewing Plaintiff's Amended Complaint, U.S. Magistrate Judge Miroslav Lovric
found that the only cause of action that Plaintiff sufficiently pled was his "Equal Protection claim
with respect to the omission of his name from Defendant's 2016 and 2017 licensed plumber lists
. . . ." (Dkt. No. 10, at 7.) Magistrate Judge Lovric found that Plaintiff's other claims should be
dismissed without leave to amend. (*Id.* at 20-21.) This Court accepted and adopted this Report-
Recommendation. (Dkt. No. 12.)

oppositions to Plaintiff's motion for summary judgment and motion for judicial notice of adjudicated facts. (Dkt. Nos. 78-79.)

### C.     Undisputed Material Facts on Defendant's Motion for Summary Judgment

Before reciting the undisputed material facts on Defendant's motion, the Court observes that Defendant has failed to provide any record citations to support all seven statements listed in its "Statement of Facts." (Dkt. No. 72-15.) This, of course, is procedurally improper under both Fed. R. Civ. P. 56(c)(1)(A)-(B) and N.D.N.Y. L.R. 56.1(a). However, the Court will nevertheless consider Defendant's factual assertions for the following four reasons: (1) the Court has found the requisite support for Defendant's undisputed facts through its ordinary review of the exhibits to Defendant's motion; (2) Plaintiff did not file a response disputing (or even addressing) Defendant's factual assertions as required by N.D.N.Y. L.R. 56.1(b)(3); (3) Plaintiff did not cite any admissible record evidence controverting Defendant's factual assertions in his motion for summary judgment; and (4) the Court seeks an efficient resolution of this matter. The Court cautions Defendant, however, against future noncompliance with the Federal Rules of Civil Procedure or this Court's Local Rules of Practice.

Accordingly, the following facts have been asserted and supported by evidence in the record by Defendant in its Statement of Material Facts and have not been disputed by Plaintiff. (Dkt. No. 72-15 [Def's. Rule 56.1 Statement].)

1.     To engage in the plumbing business in the City of Rome, a plumber needs to hold a City of Rome Master Plumbing License. (Dkt. No. 72-2, at ¶¶ 4 [Domenico Aff.].)

2.     The holder of an annual Master Plumbing License is authorized to perform plumbing work in the City of Rome for that year. (Dkt. No. 72-2, at ¶¶ 10, 14.)

3

3.      On his 2015 renewal application for a Master Plumbing License, Plaintiff indicated that he was "Inactive," "Disabled," and "Out of Business." (Dkt. No. 72-2, at ¶ 8; Dkt. No. 72-5 [Plaintiff's 2015 App.].)

4.      On his applications for the 2016 and 2017 license renewals, Plaintiff did not indicate that his "inactive" status had changed. (Dkt. No. 72-2, at ¶¶ 8, 11, 15-16.)

5.      Plaintiff was issued a Master Plumbing License in 2016 and 2017 and could have performed plumbing work in the City of Rome during those years. (Dkt. No. 72-2, at ¶¶ 9-10, 13-14, 18; Dkt. Nos. 72-6, 72-7, 72-8, 72-9.)

6.      The 2016 List was generated in January or February of 2016. (Dkt. No. 72-2, at ¶ 12.)

7.      The 2016 and initial 2017 Lists include only active plumbers in the City of Rome. (Dkt. No. 72-2, at ¶¶ 5-6, 15.)

### D.      Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

The Court again begins by observing that Plaintiff too has failed to comply with N.D.N.Y. L.R. 56.1(b)(3) in his case, by not filing a Statement of Facts in support of his motion for summary judgment (or even a response to Defendant's Statement of Facts). N.D.N.Y. L.R. 56.1(b)(3). Rather, as the Court discusses below in this Decision and Order, Plaintiff's motion for summary judgment focuses on U.S. Magistrate Judge Miroslav Lovric's previous denial of Plaintiff's request for reasonable accommodation in this action, not his equal protection claim against Defendant. The Court therefore finds that Plaintiff has not submitted any undisputed facts that are material to his remaining equal protection claim.

### E.      Parties' Briefing on the Pending Motions

### 1. **Defendant's Motion for Summary Judgment**

Generally, in support of its motion for summary judgment, Defendant sets forth four arguments. (Dkt. No. 72-3.)

First, Defendant argues that Plaintiff failed to allege facts sufficient to state an Equal Protection claim. (*Id.* at 3.) More specifically, Defendant argues that, contrary to Plaintiff's contention, he was authorized to work as a plumber in the City of Rome in 2016 and 2017 because Defendant issued him licenses for both years. (*Id.*) Defendant argues that not including Plaintiff on the 2016 and initial 2017 Lists (which Defendant created as a courtesy to the public to identify active plumbers) does not prohibit him from working as a Master Plumber in the City of Rome. (*Id.*) Defendant argues that it did not include Plaintiff on the 2016 and initial 2017 List because he stated he was "inactive," "disabled," and "out of business" on his 2015 renewal application for his license, and Defendant did not include inactive plumbers on the List prior to 2017. (*Id.* at 3-4.) Defendant argues that it did not treat Plaintiff differently than anyone else who applied for a license that year and that it did not deny him the ability to perform his trade. (*Id.* at 3.) Defendant further argues that no rational person could find that Defendant's omission of Plaintiff from the List was done with malice, was irrational or arbitrary, or was based on his membership in a suspect class. (*Id.* at 4.) Defendant also argues that Plaintiff has not alleged that Defendant treated him differently than similarly situated comparators, and that Plaintiff improperly compares himself to active plumbers. (*Id.*)

Second, Defendant argues that Plaintiff fails to allege facts sufficient to hold Defendant (a municipality) liable for actions of its employees. (*Id.* at 5.) Defendant argues that Plaintiff does not allege that Defendant's governmental custom, policy, or usage caused the alleged

deprivation of Plaintiff's rights. (*Id.*) Defendant argues that, although Plaintiff's Amended Complaint contains conclusory statements that Mike Mondrick "does what he wants" and "makes the laws" and "Defendant approves it all," Plaintiff provides no factual allegations and evidence to support that conclusion. (*Id.*)

Third, Defendant argues that Plaintiff's claim related to the 2016 List is time-barred. (*Id.*) Defendant argues that Plaintiff paid the annual fee for 2016 on December 22, 2015, and the 2016 Licensed Plumber list was created in January or February of 2016. (*Id.*) Defendant argues that the claim is untimely because Plaintiff did not file this action until July 1, 2019, and Equal Protection claims under 42 U.S.C. § 1983 have a three-year statute of limitations. (*Id.*)

Fourth, Defendant argues that the Court should dismiss the action for failure to prosecute, failure to obey court orders, and failure to engage in discovery. (*Id.* at 6.) Defendant argues that, after participating in the first telephone conference, Plaintiff never appeared on a call again, failed to provide Defendant with initial disclosures, failed to respond to Defendant's discovery demands, refused to appear for a deposition, and repeatedly disobeyed the Court's directive to explain his absence from the telephone conferences. (*Id.*) Defendant argues that the five factors that a court must assess when deciding a motion to dismiss for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) weigh in favor of dismissing Plaintiff's case: (1) Plaintiff failed to participate in the litigation by not complying with his discovery obligations or appearing after the initial telephone conference (with the exception of filing ancillary motions)—actions that caused a delay of over five months (*id.* at 7-8);[3] (2) Plaintiff had adequate notice of the possibility of

---

[3]     Defendant also notes that N.D.N.Y. L.R. 41.2 states that a plaintiff's failure to act for four months is presumptive evidence of the lack of prosecution. (Dkt. No. 72-3, at 7.)

dismissal because the Court warned Plaintiff at least seven times that failure to comply with its orders or to prosecute his case could lead to dismissal (*id.* at 8); (3) Plaintiff's delays and failure to engage in discovery have prejudiced Defendant because the passage of time causes memories to fade and makes witnesses, documents, and information harder to locate (*id.* at 9);[4] (4) the Court's need to alleviate congestion on its calendar and to efficiently resolve cases outweighs Plaintiff's right to be heard in court where, as here, Plaintiff has shown little interest in his lawsuit (*id.* at 9-10); and (5) sanctions less than dismissal are inappropriate because the Court warned Plaintiff of the possibility of dismissal at least seven times and he still failed to prosecute his case (*id.* at 10-11).

Plaintiff has not filed a response to the legal arguments asserted by Defendant.

### 2.  Plaintiff's Motion for Summary Judgment

#### a.  Plaintiff's Memorandum of Law

Generally, in his motion for summary judgment, Plaintiff sets forth six arguments. (Dkt. No. 74.)

First, Plaintiff argues that the Court must review all pleadings, recommendations, and orders in this lawsuit and the related cases *de novo* to prevent an egregious miscarriage of justice by determining whether Plaintiff would have a different outcome if he had been provided with the reasonable accommodation that he had requested of Magistrate Judge Lovric in this action

---

[4]     Defendant also argues that, where there has been unreasonable delay in the prosecution of a case, courts may presume prejudice as a matter of law. (Dkt. No. 72-3, at 9.) Defendant argues that the Court may presume prejudice in this case because Plaintiff's inaction placed the case five months behind schedule, and it has been approximately six years since the occurrence of the incidents underlying Plaintiff's claim. (*Id.*)

under the Americans with Disabilities Act ("ADA"). (*Id.* at 2.)

Second, Plaintiff argues that Magistrate Judge Lovric erred in denying Plaintiff's requested ADA accommodation of allowing his sister to serve as his "personal disability assistant." (*Id.* at 3.) Plaintiff argues that Magistrate Judge Lovric erroneously construed his request as one to rely on his sister, a lay person, as his attorney. (*Id.*) Plaintiff also argues that Magistrate Judge Lovric erred by denying Plaintiff's reasonable accommodation requests for extensions of time and for electronic filing privilege, and that Plaintiff's failure to follow Magistrate Judge Lovric's instructions is a direct condition of his disabilities. (*Id.* at 4.)

Third, Plaintiff argues that his claims specific to his loss of income and the damage to his professional reputation should not be barred by the statute of limitations because Defendant unlawfully removed Plaintiff's name from the Lists from 2011-2017 despite Plaintiff having paid all required fees and having a valid license. (*Id.* at 7.) Plaintiff argues that Magistrate Judge Lovric erred by limiting Plaintiff's claims to 2016 and 2017 because Plaintiff could show a continuing violation if he were granted his ADA accommodation request and leave to amend his complaint with assistance. (*Id.*) Plaintiff further argues that Magistrate Judge Lovric erred in citing portions of United States Magistrate Judge Andrew T. Baxter's Report-Recommendation in *Syfert v. City of Rome*, 15-CV-1149 ("*Syfert I*") and United States Magistrate Judge Therese Wiley Dancks' Report-Recommendation in *Syfert v. City of Rome*, 17-CV-0578 ("*Syfert II*") related to criminal charges that Plaintiff argues did not occur, and that this error continues to have a significant detrimental effect on the outcome of this case. (*Id.* at 7-10.)[5] Plaintiff argues

---

[5]     Plaintiff also appears to argue that Magistrate Judge Baxter and Magistrate Judge Dancks erred in various ways in the Report-Recommendations that they issued in Plaintiff's previous cases. (Dkt. No. 74, at 7-10.) Because those cases are separate from the one currently pending,

that, had he been granted the reasonable accommodation that he needs (i.e., the assistance of his sister), Plaintiff would have had a better understanding of the nature of the criminal case, how Defendant harmed Plaintiff, and why Defendant is liable for the bad acts of its employees. (*Id.* at 11.)

Fourth, Plaintiff argues that, should the Court now grant his request for reasonable accommodation for his sister to act as his disability assistant, Plaintiff could amend his Complaint to include Mark Domenico and Mike Mondrick and/or other City employees as named defendants, which would change the outcome of the case. (*Id.* at 12.) Plaintiff argues that this case could have been resolved many years ago with a more favorable outcome for Plaintiff if he had been granted his requested accommodation. (*Id.*)

Fifth, Plaintiff argues that the Court's new knowledge that Plaintiff is a disabled person requiring ADA accommodation voids the application of the "clear error" review standard applied when a party does not object to a report-recommendation. (*Id.* at 13-14.)

Sixth, Plaintiff argues that he has been penalized in this lawsuit because of his disabilities, which make him unable to comply with the Court's procedures and requests. (*Id.* at 15.) Plaintiff further argues that Defendant, as a municipality with fifty or more employees, does not have a qualified ADA coordinator on staff or an ADA grievance procedure in place, which he argues violates the ADA. (*Id.*) Plaintiff argues that neither Defendant nor this Court has provided Plaintiff with a written statement explaining why his ADA accommodation request is unreasonable, which he also argues violates the ADA. (*Id.* at 16.) Plaintiff argues that granting

---

the Court will not address those arguments.

an automatic extension of time and electronic filing privileges would not cause undue financial or administrative burden, nor would it result in a fundamental alteration to the nature of the service, program, or activity in question. (*Id.*) Plaintiff argues that Second Circuit precedent addresses the reasonableness of having a personal assistant. (*Id.* at 17 [citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 142 (2d. Cir. 1995)].) Plaintiff argues that the Court should therefore grant his request for reasonable ADA accommodation or, alternatively, grant him a jury trial. (*Id.* at 18.)

### b.  Defendant's Opposition Memorandum of Law

Generally, in its opposition, Defendant sets forth two arguments. (Dkt. No. 79-1.)

First, Defendant argues that Plaintiff has not shown that the Court should grant summary judgment in his favor, because Plaintiff did not discuss his Equal Protection claim in his motion. (*Id.* at 3.) Defendant argues that, despite the numerous deadline extensions granted to him in this case, Plaintiff has failed to produce or cite any evidence warranting summary judgment in his favor, and that Plaintiff has also sought a remedy not available to him under Fed. R. Civ. P. 56. (*Id.* at 3-4.)

Second, Defendant argues that the Court should grant its motion for summary judgment because there is no genuine dispute of material fact regarding Plaintiff's remaining claim. (*Id.* at 4-5.)

### 3.  Plaintiff's Motion for Judicial Notice of Adjudicated Facts

### a.  Plaintiff's Memorandum of Law

Generally, in his motion, Plaintiff requests that the Court take judicial notice of thirty-four "adjudicated facts" stated by Senior U.S. District Judge Lawrence E. Kahn in his

10

Memorandum-Decision of September 9, 2013, in the case of *Russitano v. Brown*, 12-CV-1641

(N.D.N.Y.). (Dkt. No. 75, at 1.) Plaintiff argues that these thirty-four facts show a history of

abuse of power and authority by Defendant's employees, including Mark Domenico, as well as

Defendant's propensity for harassing and intimidating individual homeowners and/or small

businesses. (*Id.* at 1-2.) Plaintiff argues that these facts are also undisputed and able to be

judicially noticed under Fed. R. Evid. 201(b). (*Id.* at 2.) Plaintiff argues that Fed. R. Evid. 201(c)

requires the Court to take judicial notice of these facts if a party requests it and supplies the

Court with the necessary information. (*Id.*)

### b. Defendant's Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant sets forth three arguments. (Dkt.

No. 78-1.)

First, Defendant argues that the Court may not take judicial notice of the facts listed in

Plaintiff's motion because they are subject to reasonable dispute and were taken from Judge

Kahn's recitation of allegations from the complaint filed in *Russitano v. Brown et al.* (*Id.* at 1-2.)

As a result, Defendant argues, Plaintiff's motion improperly requests that the Court take judicial

notice not of facts but of allegations (which Defendant continues to deny). (*Id.* at 2.) Defendant

argues that the allegations were never adjudicated or substantiated because Senior U.S. District

Judge Lawrence E. Kahn dismissed the complaint in *Russitano* on a pre-answer motion to

dismiss, and therefore these facts are not generally known in the territorial jurisdiction of the

Court. (*Id.*) Defendant further argues that the plaintiff in *Russitano* is not an unimpeachable

source, further prohibiting the taking of judicial notice of these allegations. (*Id.*)

Second, Defendant argues that, even if the Court were to take judicial notice of this

portion of the prior decision, it could not take judicial notice of the truth of the matters asserted therein. (*Id.* at 2-3.) Defendant argues that it would be improper for the Court to take judicial notice of the *Russitano* allegations to establish a "history" and "propensity" of Defendant. (*Id.* at 3.)

Third, and finally, Defendant argues that the Court may not take judicial notice of the *Russitano* facts because they are immaterial to this case for three reasons: (1) the allegations concern actions occurring at least four to nine years before 2016; (2) the allegations do not address the licensing of Master Plumbers in the City of Rome; and (3) Plaintiff was not a party in the previous lawsuit. (*Id.* at 3-4.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Summary Judgment Under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

---

[6] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[7] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[8] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[9]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

---

[7]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[8]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[9]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.

Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten

the movant's burden.

      For these reasons, this Court has often enforced N.D.N.Y. L.R. 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement[10]–even where the non-movant was proceeding *pro se*.[11]

      Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under

N.D.N.Y. L.R. 56.1.[12]  Stated another way, when a non-movant fails to oppose a legal argument

---

[10]     Among other things, N.D.N.Y. L.R. 56.1 requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[11]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[12]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 56.1; *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.  Legal Standard Governing a Motion for Judicial Notice of Adjudicated Facts

Pursuant to Fed. R. Evid. 201(b)(2), "a court may take judicial notice at 'any stage of the proceeding,' of any fact 'that is not subject to reasonable dispute because' it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Barton v. Warren Cty.,* 19-CV-1061, 2020 WL 4569465, at *5 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) (quoting Fed. R. Evid. 201(b)(2)). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Commcn's, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006); *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 93, n. 5 (N.D.N.Y. Mar. 7, 2013) (Suddaby, J.).

### III.   ANALYSIS

Because the outcome of Plaintiff's motion for judicial notice of adjudicated facts might affect the outcomes of the summary judgment motions, the Court will begin its analysis by discussing of Plaintiff's motion for judicial notice of adjudicated facts.

### A.    Whether the Court Should Grant Plaintiff's Motion for Judicial Notice of Adjudicated Facts

15

After carefully considering the matter, the Court answers the question in the negative for the reasons set forth in Defendant's opposition memorandum of law. (Dkt. No. 78-1.) To those reasons, the Court adds the following analysis.

Plaintiff requests that the Court take judicial notice of thirty-four "adjudicated facts" that were purportedly stated in Judge Kahn's Memorandum-Decision and Order of September 9, 2013, in *Russitano v. Brown,* 12-CV-1641 (N.D.N.Y.). As Defendant argues in its opposition, the "adjudicated facts" that Plaintiff cites merely come from Judge Kahn's recitation of the "Background" of the case (specifically, allegations included in the plaintiff's complaint in *Russitano*). *Russitano v. Brown*, 12-CV-1641, 2013 WL 4806455, at *1-4 (N.D.N.Y. Sept. 9, 2013) (Kahn, J.).[13] These allegations have not been adjudicated; instead, they are "subject to reasonable dispute" and cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Barton*, 2020 WL 4569465, at *5. The Court is also prohibited from taking judicial notice of Judge Kahn's Memorandum-Decision and Order "for the truth of the matters asserted in [that] litigation," *Global Network Commc'ns,* 458 F.3d at 157, which is precisely what Plaintiff requests from the Court in this case.

For all of these reasons, the Court therefore denies Plaintiff's motion for judicial notice of adjudicated facts.

B.     **Whether the Court Should Grant Defendant's Motion for Summary Judgment**

---

[13]     In his motion, Plaintiff references this decision as "Dkt. No. 58" from *Russitano*. (Dkt. No. 75, at 2, 6.) However, the document he attached to his motion as an exhibit and from which he pulled the "adjudicated facts" is Dkt. No. 38 from *Russitano*—a Memorandum Decision and Order than can be found at the Westlaw citation listed in this portion of the Decision and Order.

After carefully considering the matter, the Court answers the question in the affirmative for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 72-3.) To those reasons, the Court adds the following analysis.

Plaintiff's only remaining cause of action in this case claims that Defendant violated the Equal Protection Clause of the Fourteenth Amendment by omitting his name from the 2016 and initial 2017 Lists. (Dkt. No. 9; Dkt. No. 10, at 7.) Preliminarily, the Court finds that Plaintiff's equal protection claim related to the 2016 List is time-barred. The statute of limitations for a Section 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The statute of limitations begins to run on the date that the plaintiff's claim accrues, which occurs when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999). In determining when the statute of limitations begins to run, the "proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful." *Bailey v. Tricolla*, 94-CV-4597, 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995).

In this case, the City generated the 2016 List in January or February of 2016; but Plaintiff did not commence this action until July 1, 2019—more than three years after the "time of the [alleged] wrongful act." (Dkt. No. 1; Dkt. No. 72-2, at ¶ 12.) As Magistrate Judge Lovric articulated in detail in the Report-Recommendation that this Court later accepted and adopted, to the extent Plaintiff's claim relates to events occurring before July 1, 2016, that claim is not subject to either the continuing-violation doctrine or the equitable-tolling doctrine and accordingly are time-barred. (Dkt. Nos. 10, 12.)

Turning to the merits of Plaintiff's claim with respect to the 2017 List, the Court has

17

previously addressed what a plaintiff must prove when he asserts an equal protection claim,

pursuant to 42 U.S.C. § 1983, based on an alleged deprivation of his constitutional rights due to

his disability:[14]

> Generally, to maintain an equal protection claim, a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks and citation omitted). A plaintiff must also show that the alleged disparity in treatment cannot survive the appropriate level of scrutiny. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). A "disability is not a suspect classification under the Equal Protection Clause." *Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013). … However, "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Sharpe v. City of New York*, 11-CV-5494, 2013 WL 2356063, at *3 n.5 (E.D.N.Y. May 29, 2013) (internal quotation marks and citations omitted). This is called a "class-of-one" claim.
>
> In a class-of-one context, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Prestopnik v. Whelan*, 249 F. App'x 210, 212-13 (2d Cir. 2007). There must be "an extremely high degree of similarity" between the class of one plaintiff and the "alleged comparators in order to succeed on an equal protection claim." *Sloup v. Loeffler*,

---

[14]     The Court addresses Plaintiff's equal protection claim as one based on his disability, because Plaintiff has failed to articulate any other potentially protected classification to which he is entitled in this case.

745 F. Supp. 2d 115, 128 (E.D.N.Y. 2010); *see also Neilson v. D'Angelis*, 409 F.3d 100, 1004 (2d Cir. 2005), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008). "Specifically, such plaintiffs must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Camac v. Long Beach City Sch. Dist.*, 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (citations and quotation marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz v. Yates Cty.*, 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (quoting *Neilson*, 409 F.3d at 105).

*Terrill v. Winham-Ashland-Jewett Central Sch. Dist.,* 176 F. Supp. 3d 101, 110 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) ("'[C]lass of one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'") (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)); *Kaiser v. Highland Cent. Sch. Dist.*, 08-CV-0436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008) (Kahn, J.) ("Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a 'class of one' Equal Protection claim, to which the courts apply rational basis analysis.").

Plaintiff's equal protection claim fails on the merits for two reasons. First, Plaintiff has failed to provide any admissible record evidence from which a rational jury could find that there is "an extremely high degree of similarity" between him and those to whom he compares himself, *Ruston*, 610 F.3d at 60, which is a requirement of the "class-of-one" theory on which Plaintiff must rely because disability is not a suspect classification under the Equal Protection

19

Clause. *Chick,* 546 F. App'x at 60. Based on the undisputed facts, the 2016 and 2017 Lists listed only "active" plumbers, which Plaintiff was not. (Dkt. No. 72-5.)[15] Plaintiff provides no evidence regarding whether Defendant included other inactive plumbers on the Lists—evidence that could, for example, raise a genuine dispute of material fact regarding whether Defendant did not include Plaintiff on the List because of his disability, rather than his inactive status. Without any evidence that the circumstances of the other individuals on the Lists are "prima facie identical," Plaintiff cannot maintain his equal protection claim. *Kamholtz*, 2008 WL 5114964, at *5.

Second, under a class-of-one-theory, Plaintiff must submit evidence showing not only that Defendant "intentionally treated [him] differently from others similarly situated," but also that "there is no rational basis for the difference in treatment." *Kriss v. Schenectady City Sch. Dist.*, 08-CV-0230, 2010 WL 3338949, at *17 (N.D.N.Y. Aug. 24, 2010) (Suddaby, J.). Mark Domenico, the Chief Code Enforcement Officer for the City of Rome and the department head of the Rome Department of Code Enforcement, addressed the purpose of the List in his affidavit:

> The City also maintains a list of active plumbers in the City of

---

[15]   The Court notes that, on Plaintiff's "Master Plumbers Application for Registration 2015," he lists himself as "inactive," "disabled," and "out of business." (Dkt. No. 72-5.) However, on his 2016 and 2017 application, Plaintiff does not explicitly list that he is "inactive," nor does he list that he has returned to "active" status. (Dkt. No. 27, at 17, 27 [2016 and 2017 App].) Plaintiff does not contest Defendant's argument that, based on the 2015 application listing him as "inactive" and the following applications not stating anything to the contrary, Defendant reasonably believed Plaintiff continued to be inactive and therefore did not place him on the 2016 List or initial 2017 List. (Dkt. No. 72-2, at ¶¶ 8, 11, 15-16.) Along with failing to dispute Defendant's Statement of Material Facts on this point, Plaintiff never states that the categorization of him as "inactive" on the updated 2017 List is incorrect and he also listed himself as "inactive" on his 2018 application. (Dkt. No. 27, at 22.) The Court accordingly finds that no disputed material fact exists regarding whether Plaintiff was inactive during 2016 and 2017.

> Rome, merely as a courtesy to the public, in case an applicant for a
> building permit asks who they can call for plumbing work. This list
> is not discussed in the City Code, nor is being on the list a pre-
> requisite to engaging in the plumbing business in the City of
> Rome.

(Dkt. No. 72-2, at ¶ 5.) Plaintiff has not identified any evidence showing that Defendant

intentionally discriminated against him based on his disability,[16] nor has he shown that

Defendant's basis for previously listing only active plumbers on the Lists (i.e., providing

information to "applicants for a building permit [when they] ask who they can call for plumbing

work") does not survive rational basis review. *See Franks v. Russo*, 18-CV-1282, 2018 WL

6674293, at *7 (N.D.N.Y. Dec. 19, 2018) (Suddaby, C.J.) (dismissing claim where plaintiff

failed to allege he "was intentionally treated differently from others similarly situated, with no

rational basis for the difference in treatment").

Further, Plaintiff has failed to provide evidence to support Defendant's liability as a

municipality. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). To set forth

a cognizable claim for municipal liability under 42 U.S.C. § 1983, Plaintiff is required to submit

proof that a deprivation of his constitutional rights "was caused by a governmental custom,

policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)

(quoting *Monell*, 436 U.S. at 690-91); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44

(2d Cir. 1985). In this case, Defendant, as a municipality, is liable when it deprives an individual

of a constitutional right; but it "may not be held liable on a theory of respondeat superior." *Jeffes*

*v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000). An "official policy or custom" can be shown in

---

[16]      In fact, Plaintiff's claim hinges on his "inactive" status as a plumber, which is not a
suspect classification under the Equal Protection Clause of the Fourteenth Amendment.

several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Dorset-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.)

Plaintiff's allegations in his Amended Complaint that Mike Mondrick "does what he wants" and "makes the laws" and that "Defendant approves it all" are not sufficient, without actual evidence, for his claim to survive summary judgment. (Dkt. No. 9, at 23.) Just as he has failed to submit evidence regarding alleged comparators or his alleged deprivation of rights due to his alleged protected status, Plaintiff has failed to provide any evidence on how Defendant, as a municipality, may be held liable on Plaintiff's claim. (Dkt. No. 74.)

For all of these reasons, the Court finds that no genuine dispute of material fact exists regarding Plaintiff's equal protection claim, and Defendant is entitled to summary judgment.[17]

---

[17]    Defendant also argues that the Court should dismiss Plaintiff's case for failure to prosecute under Fed. R. Civ. P. 41(b). (Dkt. No. 72.) In cases such as this one, courts differ regarding whether they dismiss for failure to prosecute when summary judgment is otherwise available. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210-11 (2d Cir. 2001) ("We recognize that some other district courts facing similar situations have also dismissed plaintiffs' cases under Rule 41(b) rather than proceeding to summary judgment . . . ."); *Hunter v. N.Y. State Dept. of Corr. Servs.*, 515 F. App'x 40, 43 (2d Cir. 2013) (summary order) (recognizing that "resolutions on summary judgment . . . are generally to be preferred to dismissals under Rule 41(b)"). In this case, the Court notes that dismissal for failure to prosecute is likely appropriate for the following two reasons: (1) Plaintiff failed to engage in discovery, failed to attend multiple telephone conferences, and failed to comply with the Court's orders, despite approximately ten warnings from the Court that these actions could lead to dismissal; and (2) Plaintiff's litigious history against Defendant further supports dismissal. (*See generally* Docket Sheet; Dkt. No. 4, at

**C.      Whether the Court Should Grant Plaintiff's Motion for Summary Judgment**

After carefully considering the matter, the Court answers the question in the negative for the reasons set forth in Defendant's opposition memorandum of law. (Dkt. No. 79-1.) To those reasons, the Court adds the following analysis.

Plaintiff's motion for summary judgment does not address his equal protection claim against Defendant. Rather, as the Court stated above in Part I.D.3. of this Decision and Order, Plaintiff's motion contains a variety of arguments that relate to the following two topics: (1) the correctness of Magistrate Judge Lovric's Report-Recommendation on April 15, 2020, dismissing all of Plaintiff's claims except for his equal protection claim (Dkt. No. 10); and (2) Magistrate Judge Lovric's denial of Plaintiff's requests for reasonable accommodations under the ADA, including having his sister serve as his "personal disability assistant," providing further extensions of time in the case, and receiving electronic filing privileges.[18] (Dkt. No. 74.) Although these arguments are not proper on a motion for summary judgment, *see* Fed. R. Civ. P. 56, the Court will address them in this Decision and Order for the sake of thoroughness and in

---

1-6 [noting that this is Plaintiff's third lawsuit against Defendant since September 2015].) However, because the Court finds that Defendant is entitled to summary judgment in this case, it need not resolve the merits of Defendant's request for dismissal pursuant to Fed. R. Civ. P. 41(b).

[18]      Plaintiff also argues that Defendant violated the ADA by not having a qualified ADA coordinator on staff or an ADA grievance procedure in place. (Dkt. No. 74, at 15-17.) However, this argument is immaterial to Plaintiff's equal protection claim based on the 2016 and 2017 Lists; and, to the extent Plaintiff makes this argument in support of his objection to the Text Order issued in this case denying Plaintiff's request for his sister's assistance as his attorney, Defendant (of course) played no role in that decision and has no duty to provide Plaintiff such a reasonable accommodation in this lawsuit. (Dkt. No. 52 [Text Order]; Dkt. No. 74, at 16-17 [arguing that "[i]t is unlikely Defendant/Appellee or the District Court can sustain a claim that Plaintiff/Appellant's ADA accommodation request is unreasonable . . . ."].)

light of Plaintiff's *pro se* status. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475-77 (2d Cir. 2006).

With respect to Plaintiff's first argument regarding Magistrate Judge Lovric's recommendation of dismissal of Plaintiff's additional claims, the Court explicitly adopted Magistrate Judge Lovric's Report-Recommendation on August 5, 2020. (Dkt. No. 12.) Even setting aside the untimeliness of this challenge, the Court finds Plaintiff has provided no cause for the Court to reconsider its adoption of this recommendation. (*Id.*)

With respect to Plaintiff's requests for an attorney or "personal disability assistant" in this action,[19] any objection to, or appeal from, Magistrate Judge Lovric's rulings on this subject again is untimely. Moreover, the rulings would survive a review for clear error. *Aquastore, Inc.*, 2010 WL 610685, at *2 . Under 28 U.S.C. § 1915(e), "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e). However, "[a] party in a civil case has no constitutionally guaranteed right to the assistance of counsel." *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (internal quotations omitted). In *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), the Second Circuit set forth the following analysis in which courts must engage when determining whether to appoint counsel:

> In deciding whether to appoint counsel, . . . the district judge
> should first determine whether the indigent's position seems likely
> to be of substance. If the claim meets this threshold requirement,

---

[19]     The Court agrees with Magistrate Judge Lovric that, despite Plaintiff's contention that he was not requesting that his sister represent him, the motion indicates that his sister would be performing tasks routinely performed by attorneys and therefore (if his request were granted) constitutes a request for his sister to represent him. (Dkt. No. 74, at 11-12 [stating in his motion for summary judgment that, "[h]ad Plaintiff had the ADA accommodation he needs[,] i.e.[,] the assistance of his sister[,] *she would have done the legal research that he could not do himself*" and that she would have assisted him in amending his Complaint].)

24

> the court should then consider the indigent's ability to investigate
> the crucial facts, whether conflicting evidence implicating the need
> for cross-examination will be the major proof presented to the fact
> finder, the indigent's ability to present the case, the complexity of
> the legal issues and any special reason in that case why
> appointment of counsel would be more likely to lead to a just
> determination.

*Hodge*, 802 F.3d at 61-62. "The Court must consider the issue of appointment carefully because

every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer

lawyer available for a deserving cause." *Bloodywone v. Bellnier*, 18-CV-0615, 2018 WL

10550308, at *6 (N.D.N.Y. Oct. 17, 2018) (Suddaby, C.J.) (internal quotation marks omitted).

The Court finds that Magistrate Judge Lovric did not err in denying Plaintiff's requests

for appointment of an attorney.[20] Nor does the Court find, should Plaintiff's request for a

"personal disability assistant" in his pending motion be construed as a renewed request for an

attorney, that this request should be granted. Even "constru[ing] pleadings drafted by a [pro se

plaintiff] liberally and interpret[ing] them to raise the strongest arguments that they suggest,"

Plaintiff's remaining equal protection claim is not "likely to be of substance" and cannot

overcome the threshold requirement for the Court to consider appointing an attorney. *Lucien v.

Williams*, 20-CV-8020, 2022 WL 1451530, at *1 (S.D.N.Y. May 9, 2022); *Hodge*, 802 F.3d at

61. As the Court discussed above in Part II.B.2. of this Decision and Order, Defendant's reason

for omitting Plaintiff from the 2016 and 2017 Lists—the only alleged deprivation of Plaintiff's

rights in this case—was not based on his membership in a suspect class (i.e., his purported

disability), but rather was based on Plaintiff's status as an "inactive" plumber. Plaintiff fails to

---

[20]      (Dkt. Nos. 7, 31.)

show any alleged comparators, as required for his claim to survive, or that Defendant (as a municipality) can be held liable for the actions of its employees under *Monell*. Because Plaintiff's claim is not "likely to be of substance," and he therefore cannot meet the threshold requirement for this Court to consider appointing counsel, the Court need not address the other factors articulated by the Second Circuit in *Hodge*. *See Hodge*, 802 F.3d at 61 (stating that "[i]f the claim meets [the] threshold requirement," the court should then consider the additional factors); *Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997) ("Having thus given an affirmative answer to the *Hodge* requirement of a 'threshold showing of merit,' we can quickly address the other *Hodge* factors . . . ."); *Bloodywine,* 2018 WL 10550308, at *5 ("Since Plaintiff has failed to establish that his claim is likely to be of substance, the Court denies his motion for appointment of counsel without prejudice.").

The Court's determination is not affected by Plaintiff's alleged status as a disabled individual. In *Medina v. Napoli*, the Second Circuit noted that appointment of counsel was appropriate on the record presented, citing, in part, the plaintiff's "continuing struggles with psychiatric issues, the further deterioration of his vision to the point of blindness, and the apparent present unavailability or ineffectiveness of certain accommodations previously made to assist him in reviewing materials and presenting his case." *Medina v. Napoli,* 554 F. App'x 65, 67 (2d Cir. 2014) (summary order). The Court does not find, however, that *Medina* alters the Court's analysis of *Hodge*. "Rather, in this Court's view, *Medina* stands for the proposition that, *once such a threshold showing [of merit] is made*, consideration of a plaintiff's physical or mental disability, which would constitute a 'special reason . . . why appointment of counsel would be more likely to lead to a just determination,' is appropriate." *Williams v. Rosenblatt*

26

*Secs., Inc.*, 14-CV-4390, 2016 WL 8296928, at *2 (S.D.N.Y. Nov. 23, 2016) (emphasis added).[21]

With respect to Plaintiff's request for a reasonable accommodation under the ADA in the form of his sister serving as his "personal disability assistant" in this action, the Court finds that Magistrate Judge Lovric did not deny this request, and that Plaintiff's sister has consistently assumed this role. On March 19, 2021, Plaintiff filed a letter brief, drafted by his sister on his behalf,[22] in response to a Text Order issued by Magistrate Judge Lovric. (Dkt. No. 43.) Three days later, Magistrate Judge Lovric denied Plaintiff's request in his letter brief to be represented by his sister because she is an unlicensed layperson; but he did grant Plaintiff's request for an extension of time on the remaining deadlines. (Dkt. No. 44.) On May 25, 2021, in a motion drafted by his sister, Plaintiff asked the Court to reconsider its denial of his previous request regarding his sister's assistance. (Dkt. No. 49.) Magistrate Judge Lovric denied Plaintiff's request to be represented by his sister (an unlicensed layperson) but "render[ed] no opinion as to whether Plaintiff utilizes an assistant in any other capacity . . . ." (Dkt. No. 52.)

After this ruling, Plaintiff's sister drafted his interlocutory appeal (Dkt. No. 63), his motion for stay pending appeal (Dkt. No. 68), his motion for summary judgment (Dkt. No. 74), and his motion for judicial notice of adjudicated facts (Dkt. No. 75). Although Plaintiff argues that the use of his sister as a "personal disability assistant" could have changed the outcome of

---

[21] Even though the Court is not required to analyze the other factors relevant to appointing an attorney because Plaintiff has not met the threshold requirement, the Court nonetheless adopts and affirms the analysis of these factors set forth by Magistrate Judge Lovric in denying Plaintiff's previous requests. (Dkt. No. 7, 31.)

[22] The Court is able to discern which documents Plaintiff's sister drafted because she noted at the bottom of these documents that she had prepared them. (Dkt. No. 43.)

the case, (Dkt. No. 74, at 12), he did largely receive her assistance, and even with that assistance, Plaintiff failed to follow Magistrate Judge Lovric's repeated warnings to engage in discovery[23] or comply with the Court's orders (failures which he warned could lead to dismissal),[24] and failed to include factual or legal arguments in his motion for summary judgment as to why his equal protection claim should survive.

Even if the Court were to construe Plaintiff's request for a "personal disability assistant" as a request for a guardian *ad litem*, doing so would not save his case. "[Rule] 17(c) [of the Federal Rules of Civil Procedure] provides, in relevant part, that '[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.'" *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 200 (2d Cir. 2003) (quoting Fed. R. Civ. P. 17(c)). The Court is not under any obligation "to conduct a *sua sponte* inquiry into a litigant's competency when he or she demonstrates signs of incapacity." *Ferrelli*, 323 F.3d at 200. Rather,

> [i]f a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent, it likely would be an abuse of the court's discretion not to consider whether Rule 17(c)

---

[23]    The failure to engage in discovery includes Plaintiff's refusal to submit to a deposition requested by opposing counsel. (Dkt. No. 71.)

[24]    Since the time Plaintiff filed his "Motion for Reconsideration of ADA Request for Personal Assistant" on May 25, 2021, (Dkt. No. 49), the Court has warned Plaintiff at least five times that "failure to comply with Court orders may result in sanctions being imposed pursuant to Fed. R. Civ. P. 37 & 41, including dismissal of the case." (Dkt. Nos. 50, 51, 60, 66, and 70.)

applied.

*Id.* at 201.[25] "Standing alone, however, a litigant's bizarre behavior is insufficient to trigger a

mandatory inquiry into his or her competency." *Id.* at 202.

Other than the comments of Plaintiff's sister about his disabilities[26] and their effect on his

day-to-day functioning, the Court sees nothing in the record regarding previous incompetency

findings or notes from treatment providers undermining Plaintiff's competency. (*See generally*

Docket Sheet.) *See Chapman*, 2020 WL 3430350, at *6 ("Where there is no verifiable evidence

of a plaintiff's incapacity, the Court therefore is not required to consider whether Rule 17(c)

applies."); *Cannon v. Port Auth. of N.Y. and N.J.*, 15-CV-4579, 2020 WL 6290665, at *3

(S.D.N.Y. Oct. 27, 2020) (refusing to appoint a guardian *ad litem* where there was no "actual

documentation of Plaintiff's mental incompetency," even where the plaintiff "submitted

hundreds of pages of letters to the Court . . . , many of which contain unusual and graphic

content"). On October 27, 2021, Plaintiff requested an extension of time on all deadlines due to a

surgery he underwent on October 20, 2021. (Dkt. No. 81.) As support for his request, Plaintiff

filed a document from CNY Brain & Spine Neurosurgery that states as follows:

> Above patient has surgery with our office on 10/20/21. Patient may
> require assistance from his sister for court hearings to assist in his
> case. As recent surgery may limit his ability to fully comprehend
> matters due to pain and recent stress from surgery. Hopeful to have

---

[25]     *See also Lewis v. Newburgh Housing Auth.*, 692 F. App'x 673, 675 (2d Cir. 2017)
(summary order) (remanding case for district court to determine whether to appoint a guardian ad
litem where "the district court knew [the plaintiff] was previously found incompetent in a recent
federal criminal case" and that she "was in state custody at the Central New York Psychiatric
Center at the time it declined to *sua sponte* consider whether to appoint a guardian ad litem");
*accord Perri v. City of N.Y.*, 350 F. App'x 489, 491 (2d Cir. 2009) (summary order).

[26]     (Dkt. Nos. 43, 49, 74.)

full capabilities to proceed independently within 6 weeks.

(Dkt. No. 82, at 2.) Magistrate Judge Lovric denied the requested extension, noting that Plaintiff had filed for the extension after the expiration of the dispositive-motion deadlines (and notably, after Plaintiff had filed his motion for summary judgment and motion for judicial notice of adjudicated facts). (Dkt. No. 83.)

These records are not the type of "verifiable evidence" that require the Court to address Plaintiff's competency and potential need for a guardian *ad litem*. As Magistrate Judge Lovric has noted, the surgery did not occur until after the expiration of the relevant deadlines, and Plaintiff had filed the relevant motions before his surgery. (Dkt. No. 83.) Although the doctor's note addresses the need for assistance for approximately six weeks after Plaintiff's surgery, it does not address Plaintiff's mental state, generally, or the impact of his alleged disabilities on him prior to the surgery. Furthermore, as the Court previously noted, the Court permitted Plaintiff's requested accommodation and the only accommodation listed in the doctor's note (i.e., the assistance from Plaintiff's sister) for months leading up to the dispositive motion deadline. Accordingly, neither Magistrate Judge Lovric nor this Court has a duty to conduct a *sua sponte* inquiry into Plaintiff's competency.

Further, because the Court already determined that there is no basis to appoint an attorney for Plaintiff under 28 U.S.C. § 1915(e), even if the Court were to address the threshold competency question and found that appointing Plaintiff's sister as a guardian *ad litem* was appropriate (a finding that the Court does not make, for the reasons previously addressed), Plaintiff's claim would still not survive summary judgment. In *Berrios v. New York City Housing Authority*, the Second Circuit addressed the overlap amongst a party's *pro se* status, appointment

of a guardian *ad litem*, and appointment of counsel for an incompetent person. *Berrios,* 564 F.3d

at 133-34. The *Berrios* Court articulated the standards set forth in Fed. R. Civ. P. 17(c) and 28

U.S.C. § 1654, which permits parties to "plead and conduct their own cases personally or by

counsel." 28 U.S.C. § 1654. In doing so, the Second Circuit stated, as follows:

> The fact that a minor or incompetent person must be represented
> by a next friend, guardian ad litem, or other fiduciary does not alter
> the principle embodied in § 1654 that a non-attorney is not allowed
> to represent another individual in federal court litigation without
> the assistance of counsel. If the representative of the minor or
> incompetent person is not himself an attorney, he must be
> represented by an attorney in order to conduct the litigation.
> *Without . . . counsel, the case will not go forward at all.*

564 F.3d at 134 (emphasis added and internal quotation marks omitted); *Alano v. Sebelius,* 12-

CV-1833, 2013 WL 4806230, at *2 (N.D.N.Y. Sept. 9, 2013) (Suddaby, C.J.) ("The fact that

plaintiff may be unable to proceed *pro se*, even for reasons of incompetency, does not alleviate

the requirement under section 1654 that a non-attorney is not allowed to represent another

individual in federal court litigation without the assistance of counsel.") (internal quotation

marks omitted); *Williams,* 2016 WL 8296928, at *3 (cautioning the plaintiff that "(a) an

appointment of a guardian *ad litem* would not be accompanied by appointment of counsel for

that guardian, absent the requisite showing of merit, and (b) if a guardian were appointed, but

counsel were not, the case then would not go forward at all").

Plaintiff makes no attestations that his sister would be represented by counsel if the Court

appointed her as his guardian *ad litem*. Rather, Plaintiff's motion for summary judgment states

that, "[h]ad Plaintiff had the ADA accommodation he needs[,] i.e.[,] the assistance of his sister[,]

*she would have done the legal research that he could not do himself*" and that she would have

assisted him in amending his Complaint. (Dkt. No. 74, at 11-12 [emphasis added].) Because any

31

"representative of [a] minor or incompetent person . . . must be represented by an attorney in order to conduct the litigation," the Court finds that any appointment of Plaintiff's sister as his guardian *ad litem* would be futile because she is not represented by counsel. *See Berrios*, 564 F.3d at 134; *Perricone-Bernovich v. Cmty. Dev. Corp. of Long Island, Inc.*, 21-CV-3149, 2021 WL 3409168, at *2 (E.D.N.Y. Aug. 4, 2021) ("[I]n order for a non-attorney guardian to bring a lawsuit on behalf of an incompetent person, the guardian must be represented by counsel."); *Wenger v. New York State Dept. of Health*, 14-CV-0885, 2015 WL 3397958, at *3 (N.D.N.Y. May 26, 2015) (Hurd, J.) ("If the representative of an incompetent person under Rule 17(c) is not an attorney, he or she must be represented by an attorney in order to conduct the litigation.").

For these reasons, the Court finds that Plaintiff is not entitled to an appointed attorney, and any requests regarding a "personal disability assistant" are moot or without merit. Finally, because Plaintiff did not argue the merits of his remaining equal protection claim in his motion for summary judgment, the Court denies his motion.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for judicial notice of adjudicated facts (Dkt. No. 75) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 72) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 74) is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall enter Judgment for Defendant and close this action.

Date:   June 13, 2022
        Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge